### JOHNNIE WILLIAMS V. THE STATE.

No. 15771.   Delivered March 15, 1933.
Reported in 58 S. W. (2d) 125.

The opinion states the case.

*Quinton Wright,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

H. L. Bennett, deceased, lived in a small house about seven miles from Houston. On the night of November 16, 1931, while deceased was alone in his house engaged in writing a letter, some one killed him by firing a load of buckshot into his back. An examination of the premises disclosed that deceased's empty pocketbook was on the floor near him. Prior to the time deceased was killed, officers had arrested appellant (a negro) at his home about a mile and a half from deceased's home. In

some manner appellant escaped from the custody of the officers. In two written statements appellant declared that, after he escaped from the custody of the officers, he went back to his house and got a single barrel twelve-gauge shotgun which was loaded with buckshot; that he went to deceased's house, and, looking through the window, saw deceased sitting at a table writing a letter; that he placed his shotgun within 18 inches of the window and fired one time into deceased's back; that, after deceased had fallen to the floor, he went into the house and looked into his pocketbook, but found no money; that, throwing the pocketbook down, he left the house, carrying his shotgun with him; that he went to the bayou and threw his shotgun in; that the bayou was dry at the time. A negro woman with whom appellant was keeping company testified that appellant stated to her that he killed deceased. Although officers went to the place appellant indicated, they were unable to find a gun. The officers testified that there was water in the bayou.

Testifying in his own behalf, appellant denied that he killed deceased, and stated that he was at another place during the night deceased was killed. He declared that his statement in his confession to the effect that he killed deceased was untrue, saying that he made it because he was afraid the officers taking the confession would injure or kill him. He denied that he stated to the negro woman in question that he killed deceased.

Touching the action of the officers in obtaining the confession from him, appellant testified, in substance, as follows: After being placed in a cell, he was visited by three named officers on several occasions, but he did not tell them that he wanted to make a statement. After being in jail several days, these three officers took him out of his cell and carried him to the place where his wife was working. Taking his wife and sister into the car, the officers drove to the West End police station. There they took his wife, sister, and himself out of the car and placed them in a room together, leaving them there twenty-five or thirty minutes. Finally, the officers took him from the police station, and, leaving his wife and sister, drove to Rosslyn Heights, where deceased had lived. On the way to Rosslyn Heights one of the officers said: "We are going to take you out there and you are going to tell us the truth about this thing." He replied to the officers that he did not know anything about it. One of the officers then said to him: "You are either going to tell us something out here or we are going to leave you out here." He understood that the officers meant

that they would kill him if he did not say he killed deceased. Carrying him to his home, the officers remained there about fifteen minutes. One of the officers said: "Now are you ready to tell us the truth about this thing?" Appellant replied that he did not know anything about it. The officer then struck him on the head with his fist and knocked him on the bumper of the car. All of the parties then got in the car, and the officers drove down to the edge of the bayou. There they remained with appellant for 35 or 40 minutes. They did not tell him he did not have to make a statement. One of the officers started to writing before he asked appellant any questions. He believed the officers were going to kill him if he did not make the statement. When the officers asked him if he did not go to his house and get a shotgun on the night of the homicide, he answered in the negative. The officer replied, "Yes, you did." One of the officers acted like he was going to get his gun. Being afraid the officer would kill him, he made the statement. We quote from appellant's testimony, as follows: "The statement in the penciled statement about my going to Mr. Bennett's house that night is not true. The reason I made that statement was because they wanted me to tell them and after I didn't tell them they made threats to me and I went on and told them I did every time they would ask me and make that threat of getting the gun I would tell them 'yes' but voluntarily telling them anything, I didn't tell them nothing."

Appellant testified that after making the statement down on the bayou, the officers carried him to the sheriff's office in the county jail and that there the statement he had made and signed on the bayou was typewritten. He said he signed the second statement because he believed that, if he did not, the officers would take him back to the woods and do him the same way or worse than they had when he signed the first statement. He said, further, that he signed it because he was afraid not to sign it.

The officers admitted in their testimony that they took appellant out of jail and carried him to the place where his wife worked, saying that appellant wanted to see his wife before he made a statement. Further, they testified that they carried appellant and his wife and sister to the West End police station, where they remained for about 20 minutes. They admitted that they left the wife and sister there at the police station and carried appellant in an automobile to his own house down on the bayou. They said they stayed there a few minutes, all of them getting out of the car. They testified that they

then drove to the bayou, turning off through the woods. They said that, after reaching the edge of the woods, they took appellant's statement after due and proper warning. They declared that they did not tell appellant that he had to make a statement. They denied that they told appellant that they were going to leave him out there if he did not make a statement. Further, the officers denied that any of them hit appellant. They testified that after they took the statement, appellant signed it. They testified, further, that, after taking the statement on the bayou, they carried appellant back to the sheriff's office. They said that while there appellant told them they could write the statement on the typewriter just as he had made it in the woods. They admitted that the officers who were present on the bayou were in the sheriff's office when appellant signed the typewritten statement.

The two statements were introduced in evidence. In his charge the court recognized that there was an issue as to the voluntary character of such statements. In submitting the issue the court instructed the jury as follows:

"Now in this case if you believe from the evidence beyond a reasonable doubt that the defendant made the written statements introduced in evidence by the state and that he signed the same and that he had been warned as set out in said statements that he did not have to make any statement at all and that any statement made by him could be used as evidence against him on the trial of the case concerning which said statement was made, and that the statement was voluntarily made and without compulsion, violence, threats or persuasion, or through fear of being injured or killed, then you may consider the statements so made in connection with all the other testimony in the case in determining your verdict in this case.

"Otherwise you will not consider such written statements for any purpose whatsoever."

Appellant objected to the charge of the court on the ground that it did not sufficiently present the issue as to whether the second statement was voluntary, and presented a requested instruction sufficient, in our opinion, to have called the court's attention to the necessity of instructing the jury, in substance, that if they believed that at the time appellant made the statement on the bayou he had been threatened by the officers and put in fear of his life, or if the conduct of the officers in the absence of an open threat put appellant in fear of his life, and this was still operating on his mind at the time he signed the confession in the sheriff's office, such statement could not be considered. The opinion is expressed that the matter pre-

sents reversible error. When the second statement was made, the same officers were present who had carried appellant to the bayou and taken his first statement. Appellant testified, in effect, that he made the first statement because he was afraid the officers would kill him. He declared that at the time he signed the second statement he was still laboring under the influence which coerced him into his admission of guilt in the first place. In Williams v. State, 225 S. W., 177, it appeared that, after making a statement that came about from coercion on the part of the officers, the accused shortly thereafter made a subsequent written statement in the presence of the same officers. Under the circumstances, this court held that the presumption should obtain, in the absence of evidence rebutting it, that the same influence which coerced the accused into the admission of guilt in the first place impelled his subsequent reaffirmance of guilt, or guilty knowledge. In Johnson v. State, 88 S. W., 223, a similar situation was presented. In concluding that the charge of the court touching the voluntary character of the confession was inadequate, this court, speaking through Presiding Judge Davidson, used language as follows: "Appellant further requested the court, in regard to the confessions made to the district attorney, that if he was still laboring under the influence of threats, promises, duress, and force made by any or all of the officers, or any other person in whose custody he may have been since his arrest, and there had not been a cessation of such influence at the time he made such confession, then such confession could not be regarded."

In Hernandez v. State, 8 S. W. (2d) 947, this court, speaking through Judge Hawkins, used language as follows: "If appellant had been threatened by the officers and put in fear of his life, or if the conduct of the officers in the absence of an open threat had been such as to put appellant in fear of his life, and this was still operating upon his mind at the time he made the written confession, the same would not be admissible. This question was not submitted to the jury, but doubtless would have been if the court's attention had been directed to the omission. We mention it in order that it may not be overlooked in the event of another trial."

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.