### Juan Rocha v. The State.

No. 2162. Decided June 5, 1901.

**1.—Murder—Indictment.**

An indictment for murder is not defective because it alleged that the act was done "of his malice aforethought," instead of "with malice aforethought;" nor is it defective because it alleged that defendant "did unlawfully kill and murder;" the words "and murder" are surplusage and their insertion did not invalidate the indictment.

**2.—Murder—Severance—Order of Trial—Practice.**

Where defendant and another party were separately indicted for the murder, and defendant made affidavit for severance to obtain the testimony of such other party, alleging the materiality of the testimony for his defense; and such other party filed a controverting affidavit denying that her testimony would be material to defendant and asking that defendant be first tried; Held, that the trial judge did not err in ordering defendant to be first tried, since the power to direct the order of trial, where the parties can not agree to the severance, is expressly conferred upon the judge by article 707, Code of Criminal Procedure.

**3.—Same—Jury and Jury Law.**

On a trial for murder, defendant's challenge for cause to a juror was overruled, whereupon defendant challenged the juror peremptorily and had him stood aside. Held, it not being made to appear that any objectionable juror was afterwards forced upon defendant and sat upon the trial, defendant had no ground of complaint as to the matter.

**4.—Same—Evidence.**

On a trial for murder, where it was shown that defendant had stated to two witnesses that he had, at the instigation of deceased's wife, killed deceased at his home on the evening before discovery of the murder, and the next morning had removed the body some distance to the place where it was found, it was competent for the State to disprove his statement and show that the murder was committed at deceased's house early in the morning, and only a short time before its discovery; and to prove that early on that morning deceased's house was on fire and that when the fire department reached there in answer to the fire alarm they found the two front rooms with bed clothing and a woman's garments scattered over the floor on fire, the doors all locked, the yard gate fastened with wire which had to be broken, and that neither defendant nor deceased's wife were seen about the premises.

**5.—Motion for New Trial—Summing Up Evidence by Judge.**

While judges are expressly inhibited, by article 822, Code of Criminal Pro-

cedure, from summing up, commenting upon, or discussing the evidence in ruling on the motion for new trial, still a disregard of this inhibition does not necessitate a reversal of conviction on appeal when no error prejudicial or injurious to appellant is discoverable. Following Rains v. State, 7 Texas Criminal Appeals, 588.

### 6.—Murder—Charge of Court.

Where an indictment for murder charged that it was committed with an ax handle, and defendant's confession showed that he killed deceased with a stick which he had trimmed down for the purpose of being inserted in an ax which he had used as a wedge, a charge of court authorizing a conviction if the killing was with an ax handle was directly applicable to the evidence.

### 7.—Murder in the First Degree—Evidence Sufficient.

See the opinion for evidence summarized, which is held amply sufficient to support a conviction of murder in the first degree with the punishment assessed at death.

Appeal from the District Court of Bexar. Tried below before Hon. John H. Clark.

The indictment charged appellant with the murder of John Grimsinger, on the 16th day of January, 1901. It contained three counts, the first charging that the crime was committed with an ax handle; the second, that it was committed with an ax, and the third, that it was committed with some instrument to the grand jurors unknown.

Defendant's confession, as made to Deputy Sheriff Chas. F. Stevens, was testified to by that officer, as follows, to wit: "I am deputy sheriff of Bexar County. I was with Sheriff Tobin and Deputies Green and Irvin at the time of the arrest of Rocha. We put him on behind my horse and brought him to town. On the road he commenced to talk about the case, and I then warned him that his statements to me must be voluntary, as he was under arrest, and that any statement that he made to me would be used against him on the trial of his case. He then stated that it was all up, and he might as well tell the whole truth of the transaction. He talked in Spanish, which language I understand perfectly. Sheriff Tobin and the other deputies were present. He said that he had known Mrs. Guadalupe Grimsinger since she was a child and had always a great affection for her. That he had lived about the place for some time doing odd jobs and running errands for her. That she and her husband, John Grimsinger, lived very unhappily together, as Grimsinger was very cruel to her and often came home drunk. "Mrs. Grimsinger often talked to me about it, and then, one day, asked me if I wouldn't put him out of the way for her. I asked what she meant, and she said kill him. We talked about this for about two weeks before the killing. Finally, on the afternoon of the 16th of January, 1901, while he was asleep on a cot in the house, and after Mrs. Grimsinger and I had talked about it, at about 5:30 o'clock I took a piece of oak wood about three feet long, which I had sharpened down at one end to put in an old ax, which ax I was then going to use as a wedge. I think Mrs. Grimsinger said that she put this stick in the fire. I went into the house and the deceased was sleeping on his left side. He had on only his underclothes and socks. I struck him first on the right side of his

head, and as he turned over on his back I struck him in the center of the head. I struck him three or four times with the piece of wood. He kind of raised up, but didn't say anything, though he opened his eyes for a second only and then lay back. Mrs. Grimsinger was waiting in the next room just adjoining, and when I went in where she was she asked me if he was dead; if I was certain that he was dead. I told her that I was, but in order to be certain I went back into the room where he was lying and found that he was dead. Mrs. Grimsinger then cooked supper; I built the fire. At about 3 o'clock we dressed the body. Mrs. Grimsinger brought me his clothes and I put them on him. I then picked the body up and placed it on my shoulder, went through the kitchen where Mrs. Grimsinger was, carried the body on the back gallery, down the back steps, down the street to where it was found the next morning." That he killed Grimsinger because Mrs. Grimsinger asked him to and had known Grimsinger for some time.

*Samuel Belding, Jr., M. S. Hallam, M. W. Davis,* and *W. D. Elrod,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the first degree, and his punishment was assessed at death.

Motion was made to quash the second and third counts of the indictment, because each alleged the act was done "of his malice aforethought," instead of "with malice aforethought;" and because of said court's charge, that "defendant did unlawfully kill and murder," the words "and murder" being a conclusion of law and surplusage. If appellant's contention is correct, that the expression "and murder" is surplusage, it can be eliminated from the indictment without in any manner affecting its validity. The indictment is sufficient without the expression "and murder," but its insertion does not invalidate. If appellant with his malice aforethought did kill deceased, so far as this phase of the indictment is concerned, it is sufficient. Nor is there any merit in the contention of appellant that the pleader used the expression "of his malice aforethought," instead of "with malice aforethought." If appellant killed deceased "of his malice aforethought," it was murder, as much so as if he had killed him "with malice aforethought." Words of the same import, conveying the same idea, in charging an offense, are sufficient, although the statutory words are not used. These words and terms must be of equal or greater import than the statutory words; but, if they are of equal significance or greater import, this will be sufficient. This question has been so frequently decided in Texas that we deem it unnecessary to cite authorities.

When the cause was called for trial appellant filed an application for severance, alleging that his codefendant, Guadalupe Grimsinger, "is separately indicted for the offense growing out of the same transaction

for which he is indicted; and it is the same offense; that her evidence is material for defendant's defense, and that he verily believes there is not sufficient evidence against said Grimsinger, whose evidence is desired, to secure her conviction." Mrs. Grimsinger was separately indicted for the same murder of which appellant was convicted. She filed the following affidavit: "I, Guadalupe Grimsinger, being sworn upon my oath state: That I have read the affidavit of defendant in the above cause, wherein he states that my testimony is material for the defense of his case, and asks that I be first put upon trial. I state that my testimony is not material for his defense in any particular, and I desire that he be tried first." With these two affidavits before him, the trial judge ordered the trial of appellant to first take place. Exception was reserved. Article 707 of the Code of Criminal Procedure provides: "That where two or more defendants are prosecuted for an offense growing out of the same transaction by separate indictments, either defendant may file his affidavit in writing that one or more parties are indicted for the offense growing out of the same transaction for which he is indicted, and that the evidence of such party or parties is material for his defense, and that he verily believes that there is not sufficient evidence against the party or parties whose evidence is desired, to secure his or their conviction, such party or parties for whose evidence the affidavit is made shall first be tried; and in the event that two or more defendants make such affidavit and can not agree as to their order of trial, then the presiding judge shall direct the order in which the defendants shall be tried; provided, that the making of such affidavit does not, without other sufficient cause, operate as a continuance to either party." The essential element of this affidavit is that the testimony of the party who is sought to be tried first is material to the defense of the affiant. If this be not the case, then the application for severance is not good. Shaw v. State, 39 Texas Crim. Rep., 161. It is only to secure this testimony that will justify the affiant in having the other party first placed upon trial. The party making this affidavit can not change the order of trial, unless it be for the purpose of obtaining the testimony of his codefendant; and this testimony must be material to his defense. Where this is controverted by a codefendant, and the insistence made that the order of trial be not changed, the issue would be relegated to the trial court as to the order in which the parties should proceed to trial. It would not be sufficient that the party whose testimony is sought might be acquitted by the jury, unless the acquitted party would testify to facts that are material in the defense of the party seeking to change the order of trial. The two affidavits—one by appellant, and the other by Mrs. Grimsinger—stand in direct opposition to each other upon the essential point of this statute. If we look to the record subsequent to the making of the affidavits, as evidenced by the statement of facts, the court's order in the matter would certainly be justified; for it conclusively shows that Mrs. Grimsinger's testimony could not have been of any service to appellant, but, on the contrary, would have been most cogent against him.

But, whether we refer to the statement of facts or not, taking the statements set out in the affidavits of appellant and Mrs. Grimsinger, the court was justified in placing appellant upon trial first.  His case was first upon the docket.  In Shaw's case, supra, it was stated that, had Wilson made the controverting affidavit, the court would have been authorized to direct the order of trial.  So it was held in Chumley v. State, 32 Texas Criminal Reports, 255.

While impaneling the jury, C. M. Rounds was tendered as a juror, and on his voir dire stated he had formed an opinion from reading newspaper reports, but such opinion would not influence his action as a juror; and, in answer to appellant's question, stated it would take evidence to change that opinion.  Challenge for cause was interposed and overruled.  The juror was peremptorily challenged by appellant.  There was no objectionable juror thereafter forced upon appellant.  We deem it unnecessary to enter into a discussion of the matter.  Where a cause for challenge has been erroneously overruled,—which is not conceded here,—in order to take advantage of it, it must be shown that an objectionable juror sat upon the trial.  If defendant has a fair and impartial jury to try his case, and one to which he urges no valid objection, it is no cause for reversal that the court may have erred in overruling a cause for challenge.

Fassnidge testified that he was captain of Fire Company No. 1; that on the morning of January 17, 1901, in response to a fire alarm, the fire department proceeded to the Grimsinger house; that the two front rooms of the house were on fire,—one a bedroom; that all the doors were locked, and the gate of the yard fastened with wire, and had to be broken; bedclothing and woman's garments were scattered over the floor.  Witness remained there fifteen or twenty minutes, and saw neither appellant nor Mrs. Grimsinger.  Motion was made to exclude this testimony from the jury, and to instruct them to disregard it, on the ground that the testimony was immaterial and irrelevant, and that it failed to connect defendant in any way with the matters about which the witness testified, and was prejudicial.  We believe there was no reversible error in this.  It was abundantly proved by other witnesses, without objection, that the house, at the time mentioned by this witness, was on fire.  The bill is very meager, and, looking to it, the force of the objection seems to be found in the fact that it was not shown appellant set fire to the house.  Beyond the confession of appellant as to the killing, and his subsequent actions in regard to the homicide and the dead body, the case is one dependent mainly upon circumstantial evidence.  He made confessions to two witnesses that he did the killing at the instigation of Mrs. Guadalupe Grimsinger; that he killed deceased while asleep upon his cot, about 6 o'clock on the evening of the 16th of January, and the next morning, about 3 or 4 o'clock, went to the residence of Mrs. Grimsinger, dressed the body, and carried it some distance from the residence and deposited it upon the sidewalk, and there left it.  Under his statement, this was about two hours prior to the discovery of the fire.  The

facts tend to show that oil was spread upon the floor of the two rooms and set on fire; and a burst oil can was found in the stove. Other evidence shows beyond question that blood was in the room in which appellant said he killed deceased; that a large spot of fresh blood was found upon the back gallery where appellant stated he laid the body after carrying it from the room, before putting it on the sidewalk. From the gallery to the place where the body was deposited on the sidewalk, there were blood stains. This would tend, to some extent, to show that appellant's statement that he killed deceased the evening before, about 6 o'clock, was not true; and that at the time he moved the body it had not had time to become rigid and the blood coagulate. About 5:30 o'clock in the morning, and a very short time before the discovery of the fire, appellant was found in the kitchen at his boarding place, having made a fire for the purpose of making some coffee; that this witness went off a few moments afterwards and left him at his boarding place. Neither Mrs. Grimsinger nor appellant were at the residence at the time the fire department arrived. Taking all these circumstances together, we believe the court was justified in admitting the testimony of Fassnidge.

Bill of exceptions number 4 recites that the court, in overruling the motion for new trial, stated: "That the evidence clearly shows, by uncontradicted testimony, that defendant is guilty of murder in the first degree; that he committed the deed with his own hands; his guilt is established by his own voluntary statements and confessions made to different persons and on two separate occasions, and I therefore overrule the motion for new trial." This is signed with the additional statement, "that he stated defendant himself had proven the declaration of Guadalupe Grimsinger to the effect that defendant, with his own hand, had murdered John Grimsinger." This, it is urged, is reversible error. Article 822, Code of Criminal Procedure, provides: "In granting or refusing a new trial the judge shall not sum up, discuss, or comment upon the evidence in the case, but shall simply grant or refuse the motion, without prejudice to either the State or the defendant." In Raines v. State, 7 Texas Criminal Appeals, 588, it was held, in substance, that judges are expressly inhibited from summing up, discussing, or commenting on the evidence in ruling on the motion for new trial. This inhibition should, in the interest of justice, be strictly observed; but the disregard of it does not necessitate the reversal of a conviction on appeal, when no error to appellant's prejudice is discoverable. It is further said by the court in delivering that opinion: "In this particular case we can not see how, error though it be, this action of the judge could by any legitimate reason be availed of by defendant, inasmuch as we are clearly of the opinion that, this ruling aside, the case should in all things be affirmed because fully substantiated by the law and the facts. We can perceive no good or even tenable reason why, when the action of the court can in no possible manner up to this time have operated prejudicially to the defendant, we should reverse the case in order that a harmless error may have effect when the case is called again for trial.

In other words, we are of opinion that the court did not err in overruling the motion for new trial, however much it might have erred in discussing the case and giving reasons for its action in so doing. Another question would have been presented had the case been one which upon substantial errors required a reversal."

It is further contended the court erred in authorizing the jury to convict appellant if he killed deceased with an ax handle or an ax. There are three counts in the indictment, The first charged the killing with an ax handle; the second with an ax, the third with some instrument to the grand jury unknown, etc. Appellant's confession shows that he killed deceased with a stick which had been trimmed down for the purpose of being inserted in an ax, which he used as a wedge. The testimony of the physician shows some of the wounds to have been incised wounds and made by a sharp instrument, and some of them with a blunt instrument. We are of opinion the charge of the court is directly applicable to the evidence.

Appellant's last contention is that the testimony does not justify the conviction. That deceased was killed by some one is placed beyond the shadow of a doubt. Appellant's detailed confession connects him with the killing as the principal actor. This is corroborated by quite a number of cogent facts and circumstances. In fact, the testimony shows, if appellant's testimony and the facts are to be relied upon, that he and Mrs. Grimsinger entered into a conspiracy to kill deceased, Grimsinger, who was the husband of Mrs. Grimsinger. Mrs. Grimsinger was anxious to get rid of deceased, that defendant was very much in love with Mrs. Grimsinger, and at her request, and on account of his infatuation for her, he agreed to and did kill deceased; and, upon the fact being discovered, he fled and concealed himself; was arrested, and made confession giving full details of the whole plan and the acts performed by himself and his coconspirator. It was a cold-blooded assassination.

The judgment is affirmed.

*Affirmed.*

[Note.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.] .