JOHNNIE WILLIAMS V. THE STATE.

No. 16464. Delivered January 31, 1934.
Rehearing Denied March 28, 1934.

44

The opinion states the case.

*Quinton Wright*, of Houston, for appellant.

*Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, death.

This is the second appeal. See 58 S. W. (2d) 125, for former opinion. Between the statement of the facts appearing in said former appeal and those in the instant case, there seems little difference, save certain additional testimony adduced by the State to which reference may be later made.

The record reveals that the learned trial judge was unable to agree to many of appellant's bills of exceptions, and to a large number of them he has certified said inability, and has filed in lieu thereof certain other bills of exception. It is also

certified,—and this may in part account for the failure to file or attempt to file bystanders bills,—that while the bills of exception were in course of preparation and approval, appellant's attorney was seriously injured, and that he was confined in the hospital and unable to give his personal attention to the case. The first three bills of exception were prepared by the trial judge, each bearing the statement that he could not approve said bills as originally presented to him, and that appellant refusing to agree to any qualification, the court had prepared said bills as his own and filed them accordingly. We have examined each bill and none of them reflect error. In substance the first urges that because of statements made in qualifications placed by the trial judge upon bills of exception taken during the former trial of appellant, said judge was regarded by appellant as having expressed opinions which per se disqualified him from sitting upon this trial. The second bill set up that the jury wheel, from which was drawn the special venire in this case, was not filled according to law in that Tom Graham, Criminal District Clerk of Harris County, was not present when the wheel was filled. The facts adduced upon the hearing of the motion to quash the venire show that the wheel was properly filled, in the presence of the trial judge, the district clerk of Harris County, and other officials named in the statute. It is shown that Harris County has a district clerk, and also a criminal district clerk. The statute makes no mention of the necessary presence of a criminal district clerk. The next bill was to the introduction of two photographs, one of the building in which deceased was killed by the entrance into his neck and body of a load of buck shot; the other being of a window in one of whose panes was a jagged hole with shattered edges. The objection seems based on the failure to produce a photographer and by him prove up said pictures, but we see no need for this since two witnesses who saw the house where deceased was killed before and after the homicide attested the fact that said pictures accurately portrayed both house and window as same were after the killing. Gibson v. State, 53 Texas Crim. Rep., 370-1; Young v. State, 49 Texas Crim. Rep., 213.

Bill of exceptions No. 4 shows a complaint of testimony, the objection to which seems to have been raised for the first time in appellant's motion for new trial. In the court's qualification it is stated that when objection was made to this testimony, the jury was instructed not to consider it. Bill 5 sets out the fact that on the night of November 16, 1931, being the night of the alleged homicide, officers for another offense arrested

appellant, who lived about a mile from where Mr. Bennett, deceased, lived. That these officers took appellant to the home of one Sadler, about one hundred and fifty yards from where Bennett lived; that they let appellant get out of their car and go in to see Sadler. The exact complaint is that one of the officers having charge of appellant on said occasion was permitted to testify "The last we saw of him he was about one hundred and fifty or two hundred yards from the old man's house and going that way." The qualification to this bill shows that appellant was arrested that night for making threats against one Richardson, and was taken by the officers to Sadler's place to get Sadler to make his bond for said offense; that Sadler lived about one hundred and fifty or two hundred yards from the home of deceased, and while at Sadler's appellant escaped from the officers. We do not think the testimony inadmissible. In this connection attention might be called to the fact that in the testimony of Victoria Jackson, later herein referred to, she said that on the night in question appellant told her that he had intended to kill old man Richardson and went down there for that purpose, but Richardson's dogs bayed and he went over to old man Bennett's and saw him in there writing a letter and shot him.

Bill of exceptions 7 set out objections to the testimony of State witness Myers in reference to an alleged confession, the witness stating that he read the same to appellant and that appellant read it himself. The objection was to the last portion of the answer of the witness as being a conclusion and opinion. The court declined to strike that part of the testimony of the witness. We see no error in the matter.

Bill of exceptions 8 complains of a statement of witness Myers in that said witness was asked if he saw officer Dinkins catch Sarah Wade by the arm and tell her to get into the automobile. Witness answered that he did not, and testified that they (meaning Sarah Wade, sister of the defendant and Mary Williams, wife of the defendant) got in said automobile voluntarily. The objection was to the statement that "they got in voluntarily." We see no materiality in the matter, and no sufficient ground for exception.

Bills of exception 6 and 9 to 16 inclusive are bills prepared by the court in lieu of refused bills. All of same have been carefully reviewed. In none of them does there appear anything in which we are even in doubt as to its admissibility. To review these individually would lengthen this opinion beyond reason.

Bill of exceptions 17 complains that while appellant's wife was on the stand as a witness in his behalf, she was asked certain questions, to which appellant objected because the witness was his wife, and the questions involved new matters which were not inquired into on direct examination. The bill is qualified by setting out the questions asked and the testimony given, and both questions and answers seem entirely to relate to matters about which the witness testified on her direct examination.

Bills of exception 18, 19, 22, 23, 24 and 25 are also bills which were prepared and filed by the court in lieu of refused bills. Each of these bills has been carefully examined and is deemed to contain nothing worthy of discussion and nothing which presents any error.

Bill of exceptions No. 20 sets out that Victoria Jackson was called as a witness on behalf of the State, and testified that appellant had told her that he had killed Mr. Bennett, deceased, and had thrown the gun in a hole of water in the bayou, a few hundred yards from Bennett's house. Thereafter appellant took the stand in his own behalf and denied having made any such statement to Victoria Jackson, and was asked on cross-examination by the State's attorney, how Victoria Jackson knew that he had thrown the gun in that hole if he did not tell her about it. Appellant's counsel objected because it would be a conclusion and opinion of the witness based on hearsay, and was prejudicial and inflammatory. Victoria Jackson having testified as set out, and appellant having denied that he made the statement to her, it seems to us entirely proper to have cross-examined him in the manner set out in said bill of exceptions.

Bill of exceptions No. 21 sets up that after being arrested, officers took appellant several miles from Houston and at a point on the bank of a bayou appellant signed a penciled statement in the nature of a confession. Appellant while on the stand as a witness was asked some questions regarding where he went the night that he escaped from some officers. He was asked if he did not tell the officers who took him out on the bayou that he went to the Bennett house that night. Objection was made to this on the ground that the written statement of the appellant above referred to spoke for itself, and that any oral statements made by appellant were made while under arrest and were inadmissible. The qualification of the court shows that the State was merely asking appellant, on cross-examination, in reference to statements made by him to the officers at

the time they took his written confession, which statements appear to be embodied in the confession.

Bill of exceptions No. 26 brings forward objection to a statement of officer Dinkins that part of the time while they were out on the bank of the bayou he was looking for the gun where "He said he throwed the gun in the bayou." The objection was made that the answer was not responsive. In his qualification to this bill the court states that in appellant's confession, which was admitted in evidence, he said that after shooting Mr. Bennett he threw the gun in the bayou. We see nothing deemed erroneous in the matter complained of.

Bill of exceptions No. 27 sets up objection to the State re-opening the case and introducing the witness Mr. Myers, who testified that he gave appellant the statutory warning before appellant signed the penciled confession referred to, and that he heard officer Spradley give him the same warning. In his qualification the court certifies that Mr. Spradley did not testify in this case, and that it having been observed that the written confession contained the statement that appellant had been warned by both said Myers and Spradley, the court permitted the State to re-open the case to prove by Mr. Myers that Spradley did in fact also warn appellant. We think this matter entirely within the discretion of the court. Bill of exceptions No. 28 is substantially the same as bill No. 27.

The complaint of certain testimony appearing in bill of exceptions No. 30 seems to have been raised for the first time in the motion for new trial, which would not be sufficient to bring the matter forward for review.

Bills of exception Nos. 31 to 35 were all prepared by the court and filed in lieu of refused bills which were prepared by appellant and presented to the court, and all of same relate to the confessions of appellant introduced in evidence and the charge relating to same. Bill 31 sets out that when the State offered appellant's written confession, upon request the jury was retired, and in their absence Mr. Myers gave testimony which is set out, showing that the statutory warning was given appellant before he made such confession. It further appears that appellant's attorney said he wanted to put appellant on the stand opposing the voluntary character of said confession. The State's attorney said: "We have no objection, but if defendant takes the stand, he takes it for all purposes." Appellant further did not offer himself or any other witness on the point, but said "We except." We think this bill presents no error.

Bill of exception No. 32 sets out exception to the charge in

regard to a penciled confession of appellant introduced by the State, the State witnesses having sworn that appellant was duly warned before he signed same, and that it was voluntarily made. Looking to the court's charge as given in this case, we note that the court, after having told the jury in general terms that a statement made in jail or under arrest would be inadmissible, unless it be shown that the party making same had been warned by the persons to whom it was made that he did not have to make it, and that if he did it could be used in evidence against him,—then told the jury as follows:

"Now, if you believe from the evidence beyond a reasonable doubt, that the defendant made the penciled statement introduced in evidence by the State purported to have been made to the witness R. R. Myers and Arch Spradley and he signed the same and that he had been warned as set out in said purported statement by R. R. Myers and Arch Spradley prior to the time he signed said statement that he did not have to make any statement at all and that any statement made by him could be used in evidence against him on the trial of the case concerning which the same was made and that the statement was voluntarily made by the defendant and without compulsion, violence, threats or persuasion or through fear or by reason of any promises, then you may consider the statement so made, in connection with the other testimony in evidence in the case in determining your verdict. Otherwise, you will not consider such statement for any purpose whatsoever. * * *

"If the jury believes that the defendant made the first, or penciled statement, and at the time so doing he was influenced or induced to make the same by reason of threats to hurt, injure or kill him, or by demonstration of any kind made by any person present at the time said statement was made, if the same was made, or at any other time prior to the making of said statement, then you will not consider the same for any purpose whatsoever."

We see no merit in this bill. The same objection and the giving of the same charge in regard to the same matters appears in bill of exceptions No. 33, which complains of a typewritten confession signed by appellant and introduced by the State. We think said charge fully protected appellant's rights and presented the law.

In bill of exceptions No. 34 appellant sets out his objection to the charge for its failure to tell the jury that both officers, Myers and Spradley, must have given to appellant the statutory warning before he made the typewritten confession re-

ferred to. This seems without merit, especially in view of the fact that the court told the jury in his charge that they could not consider such confession except upon their belief that both of said officers had so warned appellant before he signed said confession. Substantially the same matter appears in bill of exceptions No. 35, which further presented exceptions to the typewritten confession. The court certifies in said bill that the typewritten confession was an exact copy of the one written in pencil, the testimony showing that the penciled confession was made out on the bank of the bayou where, according to the State, appellant had gone with the officers to show them where he had thrown the gun with which it was claimed the killing was done; the other confession was a typewritten copy of said penciled confession, typed after the parties came back to town, both being signed by appellant and witnessed by a number of persons who testified.

In addition to the confessions of appellant made to the officers in writing, which the State introduced, one Victoria Jackson, a negro woman, was also put on the witness stand, and testified that she lived near appellant, and had known him for several years. She said shortly after hearing that Mr. Bennett was killed, she went down in the neighborhood of Richmond, the county seat of Fort Bend County, where she saw appellant. She asked him what he was doing down there, and he said he was scouting from the laws. She asked him what for, and he said they had him accused of killing old man Bennett,—that he called old man Bennett the chicken ranch man. She asked appellant if he was guilty, and he commenced to cry, throwing his head down. She said that she asked him again "Did you do it?" He said: "That is what they say." She said she kept on asking him did he do it; that he hung his head down again; that she told him to hold up his head and talk to her, and he said "women folks are so funny." "I said 'Well, did you, did you do it,' and he said "Yes." "He said the old man—he said he went to William Richardson's house to kill William Richardson first, and William Richardson's dog bayed at him, barked at him, and he left William Richardson's house and went to old man Bennett's house and he was sitting up there writing a letter and old man Bennett heard somebody walking on a stick out there and he reached and pulled the shade down and about that time the shot was made. Johnnie (appellant) made the fire. * * * He said he rushed on in the house and went in his pockets; * * * He said after he went through his pockets he thought he heard somebody walking and he went on up the road then and

he came to the hole what we used to fish in,—a hole in the bayou where we fished at, and he said he dropped the gun in the hole there." In addition to this testimony given by Victoria Jackson, we note that appellant put on the witness stand one Belton Davis. On cross-examination by the State Belton Davis testified that in November 1931 he lived on a farm near Richmond; that on November 17th appellant came to his place and stayed until nearly Christmas. He said every time a white man who looked like an officer appeared, appellant would hide; would run when he saw a man hunting, seemed worried, told witness the law was looking for him for killing an old chicken man in Houston near Rosslyn Heights. He said that Victoria Jackson came down there, and he heard her talking to appellant; they were talking low, talking about the killing.

We have tried to give this case the careful consideration that ought to be given to any case wherein a citizen is sought to be deprived of his liberty, and especially when by the verdict of the jury he is to be deprived of his life. We have found no error in the record, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews his complaint registered by bill of exception No. 1. Said bill reflects that on April 18, 1933, when this case was called for trial, appellant filed a written motion to disqualify the presiding judge, said motion being based on the following incident. The case had been tried before at a prior term of court and on June 18, 1932, the judge had overruled appellant's motion for new trial, incorporating in the order his finding on certain issues of fact which were controverted by the State, and also certain other findings regarded by appellant as expressive of the individual opinion of the judge as to appellant's guilt. The record shows that the court had no personal knowledge of the case, and that whatever expression indicating his belief of appellant's guilt, or other findings which were incorporated in the order overruling the motion, were based upon the evidence heard by the court. The order was regarded by appellant as being unauthorized under article 758 C. C. P., which reads: '

"In granting or refusing a new trial, the judge shall not sum up, discuss, or comment upon the evidence in the case, but shall simply grant or refuse the motion, without prejudice to either party."

On June 25, 1932, appellant filed a motion to have the order of June 18 expunged from the record, and requested that in

lieu thereof the order simply show that appellant's motion for new trial had been overruled. The trial judge refused to expunge the order complained of. Appellant urges that the refusal of the court to change the order, and the findings and expressions contained therein, worked a disqualification of the judge. The bill of exception in question brings forward complaint of the action of the judge in declining to hold himself disqualified. Article 758 C. C. P. has been the subject of comment by this court on more than one occasion. A violation of its provisions will not call for a reversal of a judgment where complaint has been registered in the particular trial then being reviewed unless injury is shown. Rains v. State, 7 Texas App., 588; Johnson v. State, 31 Texas Crim. Rep., 456, 20 S. W., 985; Rocha v. State, 43 Texas Crim. Rep., 169, 63 S. W., 1020. Section 11, article 5 of the State Constitution reads, in part, as follows:

"No judge shall sit in any case wherein he may be interested, or where either of the parties may be connected with him, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when he shall have been counsel in the case."

Article 552, C. C. P. reads as follows:

"No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree."

In Berry v. State, 83 Texas Crim. Rep., 210, 203 S. W., 901, this court expressed the opinion that the ground of disqualification of a judge set out in the Constitution and Statute mentioned appeared to be exclusive, citing in support thereof a number of authorities. Prejudice of the trial judge against the accused does not disqualify the judge, neither does expression of the judge indicating his belief in accused's guilt. The effect of such belief or opinion, when shown to exist, calls for a close scrutiny of the judge's ruling in the case at hand. Bismark v. State, 45 Texas Crim. Rep., 54, 73 S. W., 965; Gaines v. State, 38 Texas Crim. Rep., 202; Drechsel v. State, 39 S. W., 678. The complaint brought forward in bill of exception No. 1 cannot be sustained and was properly disposed of in our original opinion.

In the two confessions of appellant which were introduced in evidence by the State it was recited that appellant was warned by both officers Myers and Spradley. The latter was not

present at the trial. Myers testified that both he and Spradley gave the warning. By bill of exception No. 27 appellant brings forward complaint because Myers was permitted to testify, over objection, that it was hearsay, that he heard Spradley also give appellant the proper warning. Usually the warning is proven up by the party giving it, but we see no reason why proof thereof cannot be made by any witness who was present and heard it. A somewhat similar question was before the court in Ortega v. State, 58 S. W. (2d) 825, where the point was made that the correctness of the translation of a confession from Spanish into English could be proven only by the person doing the translating. The point was overruled.

We think appellant's suggestion that he was deprived of counsel cannot be sustained. The suggestion is predicated upon the following unfortunate occurrence. After the trial counsel prepared many bills of exception and turned them over to the trial judge for his approval. Many of the bills the court did not think it proper to approve without qualification. Before counsel could assent or dissent to the proposed qualifications he suffered serious injuries in an automobile accident and was for a long time totally unable to attend to any business whatever. In order that appellant be not deprived of his bills the court prepared bills of his own in lieu of many which he intended to qualify. The presumption prevails, in the absence of any showing to the contrary, that the bills prepared by the court correctly reflected the record. In view of such presumption it follows that appellant has been deprived of no right which could have been protected by counsel had he not sustained the accidental injuries mentioned.

Because of the death penalty having been assessed we have again examined carefully all of the bills of exception and find none of them reflect error upon which a reversal could be based. The statement of facts has likewise been again reviewed. The evidence to our minds amply sustains and warrants the verdict assessing the extreme penalty.

Counsel for appellant is to be commended for his zeal in behalf of his client. He has left nothing undone which could have been accomplished in his behalf. The facts were not of his making. They reflect a murder without excuse and for no cause except the hope of gain.

The motion for rehearing is overruled.

*Overruled.*