# OCTOBER 23, 1942

### EX PARTE DAISY LARGENT.

No. 21733. Delivered April 8, 1942.
Rehearing Denied June 3, 1942.
Appealed to United States Supreme Court.
Mandate Ordered Recalled June 8, 1942.
Petition for Writ of Certiorari Denied by
United States Supreme Court October 19, 1942.
Order Recalling Mandate Set Aside and Clerk of Court of
Criminal Appeals Directed to Issue
Mandate October 23, 1942.

The opinion states the case.

GRAVES, Judge, dissenting except to that part of the opinion on motion for rehearing holding Judge Beauchamp not disqualified to sit in the case.

*C. C. McKinney,* of Cooper, and *Hayden C. Covington* and *Joseph F. Rutherford,* both of Brooklyn, N. Y., for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

The City of Paris in Lamar County, Texas, adopted an ordinance, Section 3 of which reads as follows:

"It shall hereafter be unlawful for any person to sell, barter, exchange, or offer for sale, barter or exchange, any character of property whatever on the Plaza or streets adjacent thereto. The Plaza may be used subject to regulation and control by the Mayor and Police Department for the purpose of parking vehicles, and in order to avoid confusion, congestion and interference with traffic, the Police Department may by proper marking designate space for parking purposes."

A violation of the provision of said ordinance was made punishable by a fine of not less than five nor more than one hundred dollars.

Relator was prosecuted under a complaint which charged that she offered literature for sale upon the Plaza of the City of Paris. She was convicted and her punishment assessed at the maximum fine. She did not appeal to the County Courts as she may have done under authority of Art. 876 C. C. P. When taken into custody under a capias pro fine she applied for and obtained a writ of habeas corpus from the Judge of the District Court. After a hearing said judge remanded her to the custody of the City Marshal of the City of Paris. It is from this remanding order that she prosecutes an appeal.

Appellant attacks the validity of the judgment of conviction by asserting that the ordinance under which she was convicted is unconstitutional. If the ordinance *is void on its face* then this court has jurisdiction to so determine in this proceeding. Ex parte Slawson, 139 Tex. Cr. R. 607, 141 S. W. (2d) 609; Ex parte Spelce, 135 Texas Crim. Rep. 367, 119 S. W. (2d) 1037; Ex parte Adolf, 86 Tex. Cr. R. 13, 215 S. W. 222; Annotations to Art. 113, Vernon's Tex. C. C. P., Vol. 1.

The section of the ordinance upon which the prosecution is based speaks for itself. It does no more than forbid the use of the Plaza by persons as a place to carry on the business of selling or trading property. The authority to enact such an ordinance seems clear. West, et al v. City of Waco, 294 S. W. 832; City of San Antonio, et al v. Walters, et al, 253 S. W. 544; City of Waco v. O'Neal, et al, 33 S. W. (2d) 205; Greene

v. City of San Antonio, 178 S. W. 6; Ex parte Hogg, 156 S. W. 931; Wade v. Nunnelly, 46 S. W. 668; Ex parte Henson, 49 Tex. Cr. R. 177, 90 S. W. 874; 30 Tex. Jur., Sec. 71, p. 146.

We discover nothing in the terms of the ordinance which renders it unconstitutional.

It is the further contention of relator that if the ordinance is not invalid upon its face, then a wrong application has been made of such ordinance in the instant case, which is only another way of saying that the facts do not support the judgment of conviction. A limitation has been placed upon this court by statute in regard to the last question suggested, beyond which it cannot properly go.

Article 53 C. C. P. reads as follows: "The Court of Criminal Appeals shall have appellate jurisdiction co-extensive with the limits of the State in all criminal cases. This article shall not be so construed as to embrace any case which has been appealed from any inferior court to the county court or county court at law, in which the fine imposed by the county court or county court at law shall not exceed one hundred dollars." The procedure here by habeas corpus and an appeal from the judgment therein if presented to secure a review of the facts would effect by indirect means that very thing which has been directly prohibited, and would entail upon this court the review of the facts in every case where a conviction might be had in a city or justice court and brought to this court by habeas corpus proceeding, when it was the clear intention of the statute to make the judgment in the county court in such cases final.

The decisions of this court have given effect to.said Art. 53 C. C. P. See Ex parte Oliver, 3 Tex. Cr. App., where relator undertook to come—as does relator here—by habeas corpus direct from the city court. Griffin v. State, 5 Tex. Cr. App. 457; Ex parte Boland, 11 Tex. Cr. App. 159, in which Judge Winkler, writing for the court, said:

"There is a class of cases where the right of appeal ends with the County Court, however great the seeming hardship may be to the party interested. Among these cases may be classed criminal proceedings commenced before justices' courts, mayors and recorders of incorporated cities and towns, and taken to the County Court by appeal or otherwise. In such cases the

right to appeal further is limited by the Constitution and the laws. If a convicted defendant can bring himself within these constitutional and legal provisions, an appeal will lie to this court; if he cannot, then the judgment of the County Court is a finality, and he is without remedy, even by a resort to the writ of habeas corpus."

Later on in the opinion he said further: "* * * it appearing that the County Court had jurisdiction of the person of defendant as well as of the matter in litigation, whatever defense he had it became his duty to submit it to that court and at that time; and if by the Constitution and the law he was not entitled to a further appeal he is without remedy; and the writ of habeas corpus cannot be invoked to relieve him from custody, he being confined on account of his failure to pay a pecuniary fine imposed against him on a regular trial before a court of competent jurisdiction."

Ex parte Branch, 36, Tex. Cr. R. 384, 37 S. W. 421; Ex parte Cassens, 57 Tex. Cr. App. 377, 122 S. W. 888, (quoting from and citing with approval Ex parte Boland, (supra); Ex parte Cooks, 61 Tex. Cr. R. 449, 135 S. W. 139, in which it is said: "This court in a proceeding of this character is not authorized to go behind a judgment valid on its face on an allegation of irregularity rendered by a court of competent jurisdiction, or inquire into the facts as to whether or not the defendant, under the facts, ought to have been convicted." Ex parte Dickerson, 30 Tex. Cr. R. 448, 17 S. W. 1076; Ex parte Kennedy, 128 Tex. Cr. R. 21, 78 S. W. (2d) 627, in which case the relator was convicted in the city court, appealed to the county court, was again convicted, and then came to this court on appeal from an order remanding him in habeas corpus proceedings. This court said:

"Whether the facts show him to be guilty of a violation of the provisions of the ordinance will not be inquired into, because to do so would be in opposition to article 53, C. C. P., and permit relator to do indirectly that which he cannot do directly, viz., under the guise of a habeas corpus proceeding, secure at the hands of this court a review of the facts as to whether relator violated the ordinance. Ex parte Kent, 49 Tex. Cr. R. 12, 90 S. W. 168; Ex parte Rogers, 83 Tex. Cr. R. 152, 201 S. W. 1157; Ex parte Drenner (Tex. Cr. App.) 67 S. W. (2d) 870; Ex parte Hernandez (Tex. Cr. App.) 71 S. W. (2d) 289; Ex parte Vaughan, 93 Tex. Cr. R. 112, 246 S. W. 373."

One of the most recent cases upon the subject with which this court has dealt is Ex parte Slawson, 139 Tex. Cr. R. 607, 141 S. W. (2d) 609. There the relator had been convicted in the justice court for disturbance of the peace. He appealed to the county court and was again convicted. He then secured a writ of habeas corpus from the district judge. Upon a hearing he was remanded, from which order he appealed to this court. Judge Graves, writing for the court said:

"It is evident that relator is attempting to make the writ of habeas corpus serve as an appeal to this court by means ot attacking * * *" the statute under which he was convicted. We declined to pass upon any question save the validity of the statute. So in the present case it is apparent that the relator here is attempting to seek a review by this court of the facts in her case under the guise of an attack upon the ordinance in question. It is clear from the authorities cited and the provisions of Art. 53 C. C. P. that we are without authority to do so. If some cases from this court may be found which seem to be in conflict with such holding they are out of harmony with said Art. 53 and the great number of cases construing said article. Either that, or the claimed conflict is more apparent than real.

If relator was dissatisfied with the judgment of the city court upon the facts she should have availed herself of an appeal to the county court. It is true that if she had been again convicted there and the fine was not more than one hundred dollars she would have been in no better position to secure a review of the facts here in a habeas corpus.

The judgment remanding relator is affirmed.

GRAVES, Judge (dissenting).

Relator, a member of a religious sect called Jehovah's Witnesses, was convicted in the corporation court of Paris, Texas, for the violation of Section 3 of Ordinance No. 922 of such city, and was by the jury fined the sum of $100.00, the highest fine assessable under the ordinance. This paragraph of the ordinance could be called one regulating hucksters and peddlers in such city. The portion herein claimed to be violated reads as follows:

"Section 3. It shall hereafter be unlawful for any person to sell, barter, exchange, or offer for sale, barter or exchange, any character of property whatever on the Plaza or streets

adjacent thereto. The Plaza may be used subject to regulation and control by the Mayor and Police Department for the purpose of parking vehicles, and in order to avoid confusion, congestion and interference with traffic, the Police Department may by proper marking designate space for parking purposes."

The relator contends, and the proof shows, that her only activity on what is called "the Plaza" in such city was an effort to distribute two religious tracts called the "Watchtower" and "Consolation," which were mainly concerned with furthering the religious tenets of the "Jehovah's Witnesses" religious sect. Pay would be received for these tracts if proffered, or such tracts given if no pay was forthcoming.

Under Art. 53, C. C. P. it is contended by the State that no jurisdiction of this appellate court attaches to this appeal from a refusal of the district judge to discharge relator because of the fact that the case in which the conviction was had in the corporation court was not appealed to the county court, and therein a fine of more than one hundred dollars was assessed. See Art. 53, C. C. P. However, it is further admitted that if the ordinance itself is void, then the writ of habeas corpus should lie, and relator would be entitled to her discharge thereunder. To this effect do we find this court's decisions in Ex parte Patterson, 42 Tex. Cr. R. 256, 58 S. W. 1011, 51 L. R. A. 654; Ex parte Baker, 78 S. W. (2d) 610.

It is also contended that although Section 3 of such ordinance is a valid ordinance when applied to bona fide hucksters and peddlers, if the same should be held to apply to facts such as are herein shown, then the same is violative of the First Amendment to the Federal Constitution, which says:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably assemble, and to petition the government for a redress of grievances."

It is vigorously contended that any ordinance, peddlers or otherwise, that has for its purpose the prohibiting of relator from the free exercise of her religion is violative of her rights under this clause of our Federal Constitution, as well as the Constitution of the State. Again, that such an ordinance is violative of her right of free speech, and also of the freedom of the press vouchsafed to her by these Constitutions.

True it is, that it has been held that these provisions of the Federal Constitution are not a restraint upon the powers of the State, nevertheless the states are precluded from abridging the freedom of speech or of the press by force of the due process clause of the Fourteenth Amendment to the Federal Constitution.

In the case of Lovell v. Griffin, 82 L. Ed. 949, Chief Justice Hughes, speaking for the court, in construing an ordinance that prohibited the distribution of circulars, handbooks, advertising, or literature of any kind in the City of Griffin, Ga., without first having obtained a permit from the manager of said city, had the following to say, among other things:

"We think that the ordinance is invalid on its face. Whatever the motive which induced its adoption, its character is such that it strikes at the very foundation of the freedom of the press by subjecting it to license and censorship. The struggle for the freedom of the press was primarily directed against the power of the licensor. It was against that power that John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing.' And the liberty of the press became initially a right to publish 'without a license what formerly could be published only with one.' While this freedom from previous restraint upon publication cannot be regarded as exhausting the guaranty of liberty, the prevention of that restraint was a leading purpose in the adoption of the constitutional provision. See Patterson v. Colorado, 205 U. S. 454, 462, 51 L. ed. 879,27 S. Ct. 556, 10 Ann. Cas. 689; Near v. Minnesota, 283 U. S. 697, 713-716, 75 L. ed. 1357, 1366-1368, 51 S. Ct. 625; Grosjean v. American Press Co. 297 U. S. 233, 245, 246, 80 L. ed. 660, 666, 667, 56 S. Ct. 444. Legislation of the type of the ordinance in question would restore the system of license and censorship in its baldest form., * * *."

Again "As the ordinance is void on its face, it was not necessary for appellant to seek a permit under it. She was entitled to test its validity in answer to the charge against her. Smith v. Cahoon, 283 U. S. 553, 562, 75 L. ed. 1264, 1271, 51 S. Ct. 582."

Again in the cases of Schneider v. Town of Irvington, New Jersey; in Young v. State of California; in Snyder v. City of Milwaukee, Wisconsin; and Nichols v. Commonwealth of Massachusetts, 308 U. S. 146, 84 L. ed. 155, all four cases being

treated together, Justice Roberts writing the opinion therein, it was shown that the bases of such appeals were violations of ordinances that prohibited the passing or giving of circulars to the people on the streets of such cities, and giving or selling of any literature within their confines without having first being subject to certain requirements of the city ordinance relative to obtaining a permit so to do. In such instances the judgments of conviction were set aside, being held to be in contravention of the appellants' constitutional rights guaranteeing the freedom of the press, and freedom of the exercise of religious liberty. It is said by Justice Roberts:

"We are not to be taken as holding that commercial soliciting and canvassing may not be subjected to such regulation as the ordinance requires. Nor do we hold that the town may not fix reasonable hours when canvassing may be done by persons having such objects as the petitioner. Doubtless there are other features of such activities which may be regulated in the public interest without prior licensing or other invasions of constitutional liberty. We do hold however that the ordinance in question, as applied to the petitioners conduct, is void, and she cannot be punished for acting without a permit."

In Commonwealth v. Reid, 20 Atlantic Rep. 2d 841, the Superior Court of Pennsylvania had under consideration an ordinance prohibiting the sale of practically everything, including magazines and periodicals, in the City of Clearfield Borough without taking out a license and paying a fee therefor. Reid and his wife were "Jehovah's Witnesses" and were convicted under such ordinance of selling and offering for sale without a license the pamphlets "Watchtower" and "Consolation." That court held that to the extent that such ordinance prohibited Reid and his wife from the sale and distribution of such literature unless a license had been procured, that same was unconstitutional and void. These two tracts offered for sale in the Reid case, supra, are identical in name with the tracts shown to be offered for sale by relator.

Again it was held in Reid v. Brookville, Pennsylvania, 39 Fed. Supp. 30, that an ordinance requiring a license to be obtained by each person selling or distributing merchandise, including books and periodicals, on the streets or from door to door in such city, was attempted to be enforced against "Jehovah's Witnesses," engaged in like endeavors to relator herein, and such attempted enforcement was enjoined as a

denial of freedom of speech, of press and the exercise of religion.

We take it to be fairly demonstrated by the herein quoted decisions that the highest court in our land will not allow an ordinance to stand that has for its purpose or that results in a prohibition of the relator distributing the tracts and pamphlets above referred to; that the enforcement of such ordinances would deprive her of her rights under the due process clause of the Fourteenth Amendment by the devious method of taking away from her the rights guaranteed under the First Amendment to such Constitution. If such be granted, then the question arises relative to the relator's right to the exercise of the writ of habeas corpus, in this instance. The same question was raised by the State in the cause of Ex parte Patterson, 42 Tex. Cr. R. 256, 58 S. W. 1101, and the court held in that case:

"There is no question as to the jurisdiction of this court to grant original writs of habeas corpus. But, as was said in Ex parte Lynn, 19 Texas Criminal Appeals, 120, 'a sound discretion will be exercised in granting the writ, and this court will not authorize the issuance of the writ as an appellate proceeding.' And see Ex parte Boland, 11 Texas Criminal Appeals, 159. And, as was said in Ex parte Lambert, 37 Texas Criminal Reports, 435, 'inasmuch as this court has jurisdiction by appeal in habeas corpus proceedings, the writ will only be granted originally in extraordinary cases, as where the proceeding is void, and an appeal will not be an adequate remedy.' In this case the relator had been tried in the corporation court of Wills Point, adjudged guilty, and was in custody of the officer, but did not prosecute an appeal. His appeal, however, would have been to the county judge; and, if an appeal had been prosecuted, the punishment, if it had been less than $100, would not have authorized an appeal to this court, and the county judge refused the writ. So we take it that this is a proper case for the granting by this court of an original writ. It may be regarded as settled law in this State that the writ of habeas corpus is the proper remedy, and relief will be granted as against a city ordinance, where the ordinance in question is so unreasonable as to be void. Ex Parte Battis, 40 Texas Crim. Rep. 112, and authorities there cited."

It was shown in the Patterson case, supra, that the relator was only tried in the corporation court, and did not appeal

therefrom to the county court, but immediately resorted to an application for the writ of habeas corpus, alleging the invalidity of the ordinance under which he was convicted. In fact his appeal on writ of habeas corpus had been theretofore dismissed by this court because of relator not being in custody, the dismissal occurring at an earlier date than the decision above referred to. See Ex parte Patterson, 56 S. W. 912.

This court has been fairly liberal in its use of the writ of habeas corpus in matters where the construction of city ordinances are claimed to be unreasonable and void as is evidenced by the example set in Ex parte Roquemore, 131 S. W. 1101. In that case the above doctrine of the voidness of the statute or ordinance is recognized and left intact in the reasoning; however the Roquemore case goes further and holds in effect that if the facts show that the enactment is being used and interpreted in a manner that would deny to the relator his constitutional rights, then such an enactment to that extent is void, and relief will be granted by means of the writ of habeas corpus, although the relator had not exhausted his statutory right of appeal. In the Roquemore case the relator was charged in the corporation court of the city of Nacogdoches with being the manager and proprietor of a baseball park therein, and that on Sunday he permitted a baseball game to be played therein for public amusement and charged an admission fee therefor, this prosecution being had under what is now known as Art. 286, P. C. After Roquemore's conviction in the corporation court, he did not appeal to the county court, but filed with the county judge of such county an application for a writ of habeas corpus, which application was by the county judge denied; whereupon this court granted his application, issued the writ, and the matter came up for decision. In that case this court, through Judge Ramsey, held:

"We are met at the threshold of the case with the suggestion by our able Assistant Attorney General that the writ of habeas corpus cannot apply in this character of proceeding; that it is sought merely as a method of appeal or supersedeas, and under the authority of the cases of Ex parte Schwartz, 2 Tex. App. 74, Perry v. State, 41 Tex. 488, Ex parte Dickerson, 30 Tex. App. 448, 17 S. W. 1076, and the still later case of Ex parte Cox, 53 Tex. Cr. R. 240, 109 S. W. 369, cannot be entertained, and that the judgment of inferior courts can only be attacked by writ of habeas corpus for such illegalities as rendered them void (Ex parte Gibson, 31 Cal. 619, 91 Am. Dec. 546) ; and that

the erroneous judgments of inferior courts having jurisdiction of the subject matter and of the person cannot be successfully attacked upon habeas corpus, unless they are so far erroneous as to be absolutely void (9 Am. & Eng. Enc. of Law, 222), and that it is only when the proceeding is void that the writ of habeas corpus may be resorted to (Ex parte Slaren, 3 Tex. App. 662, and Ex parte Boland, 11 Tex. App. 166).

"That these general rules obtained there can be no sort of question, but, as we believe, they have no application to the case here. The sole matter in controversy in this case is as stated in the agreed statement of facts: 'Whether or not the complaint hereinbefore mentioned charged an offense under the facts herein agreed upon in view of article 199 of the Penal Code of 1895 of this state, or whether the facts heretofore agreed upon make an offense denounced by article 199.' So that we are confronted with the question as to whether in this state it is unlawful for one, the proprietor of a baseball park, to permit a game to be played therein on Sunday, or to cause a game to be played on Sunday therein where an admission fee is charged. If there is no such law in this state, then manifestly no offense is charged, and none could be charged upon any state of case made by this record, or that could be predicated upon any state of facts reasonably applied to the condition of relator."

Then follows reasoning under the doctrine of ejusdem generis to show that the statute invoked in such prosecution, when using the phrase "places of public amusement," did not intend to include a baseball park, and therefore an attempt to include in such phrase a baseball park was a misapplication of such statute, the opinion being terminated as follows:

"Believing that the law under which relator is sought to be held does not make the act set forth an offense, it is ordered that he be, and is hereby, discharged."

It will be noted that the Roquemore case came to this court direct from the corporation court, with no prior appeal to the county court, and in so far as that case was concerned, it could never have reached this appellate court under the statute, because the highest fine allowable under the statute was $50.00, and under Art. 53, C. C. P., it is necessary for the fine assessed in the county court, upon a de novo trial, to exceed $100.00 before the right of appeal lies to this appellate court. There

exists a similarity in the present case to the Roquemore case in that the highest fine that could be assessed against this relator herein, upon an appeal to the county court, could not exceed $100.00, and under Art. 53, C. C. P. she could have no right of appeal to this court.

It is evident from the agreed statement of facts presented to this court that at the time of her arrest relator was engaged in a lawful occupation, doing certain acts not denounced as an offense by said ordinance, and certain acts that could not be legally denounced as mala per se, nor as mala prohibita; that such ordinance, if it does the things contended by the judgment of the corporation court that it does do, and which are established by its judgment in the total amount of $113.20, would be an infringement upon relator's constitutional rights, as set forth in the State Constitution, see Art. I, Secs. 6 and 8, as well as in the Federal Constitution.

I therefore think relator is entitled to her discharge, and that the judgment of the district court should be reversed and she be discharged from custody under the capias pro fine of the corporation court of Paris.

Thus believing, I respectfully enter my dissent to the majority opinion of my Brethren.

### ON MOTION FOR REHEARING.

DAVIDSON, Judge.

In connection with, and as a part of, her motion for rehearing, appellant has filed her verified motion suggesting the disqualification of Judge Tom L. Beauchamp, a Judge and Member of this Court, to sit as such in this case. The ground or basis thereof is that, during the argument of this case upon its original submission, Judge Beauchamp stated from the bench:

"I prepared this Paris ordinance involved in this case when I was in the City Attorney's Office of the City of Paris."

Appellant, in this proceeding, attacked the validity of that ordinance. The decision of this court was in favor of the validity thereof. She insists that such statement on the part of Judge Beauchamp shows that he is disqualified because he acted as attorney for the City of Paris in connection with the drafting of the ordinance.

The City of Paris is not a party to this proceeding. The subject matter involved in this case is whether appellant is unlawfully restrained of her liberty under a conviction, in the name of the State of Texas, for a violation of the ordinances of the City of Paris.

Under the Constitution (Art. V, Sec. 11) and laws of this state ( Art. 552, C. C. P.), a judge is disqualified from sitting or acting as such in a criminal case when: (a) he is interested in the case; (b) he has been counsel for the State or accused; (c) he is related to accused or injured party within the third degree. These grounds of disqualification are exclusive. Berry v. State, 203 S. W. 901, 83 Tex. Cr. R. 210; Williams v. State, 69 S. W. (2d) 759, 126 Tex. Cr. R. 42.

The term "interested in the case" means a direct interest in the case or matter to be adjudicated so that the result must, necessarily, affect his personal or pecuniary loss or gain. Ex parte Kelly, 10 S. W. (2d) 728, 111 Tex. Cr. R. 54; Hubbard v. Hamilton County, 113 Tex. 547, 261 S. W. 990; Richardson v. State, 4 S. W. (2d) 79, 109 Tex. Cr. 148; Tumey v. Ohio, 273 U. S. 510, 47 Sup. Ct. Rep. 437, 71 L. ed. 749.

To come within the meaning of "counsel in the case," it must appear that the judge acted as counsel in the very case that is before him. 25 Tex. Jur. 292; Trinkle v. State, 59 Tex. Cr. R. 257, 127 S. W. 1060; McIndoo v. State, 66 Tex. Cr. R. 307, 147 S. W. 235; Koenig v. State, 33 Tex. Cr. R. 367, 26 S. W. 835, 47 Am. St. Rep. 35. Under these authorities, the conclusion is reached that Judge Beauchamp is not disqualified from sitting as a Judge in this case, and appellant's contention to the contrary is overruled.

As to the other grounds asserted and relied upon in the motion for rehearing, the opinion this day delivered in Cause No. 21,798, Ex parte Tully B. Killam, upon motion for rehearing, is applicable and is here adopted as a part of this opinion. (Page 606 of this volume.)

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

606

GRAVES, Judge.

Inasmuch as Judge Beauchamp took no part in our deliberations herein relative to the question as to his disqualification, I here express my agreement with the portion of the opinion on motion for a rehearing that holds him not to be disqualified in the decision of this cause.

I still adhere to my views expressed in this dissenting opinion on the original submission hereof.

HAWKINS, Presiding Judge.

Upon the request of Attorney for appellant an order was entered on June 8th, 1942, directing the Clerk of the Court of Criminal Appeals to recall the mandate, in order that appellant might file an application for Writ of Certiorari to the Supreme Court of the United States.

Appellant's application for writ of Certiorari was denied October 19, 1942, as evidenced by "Order on Petition for Writ of Certiorari" issued by the Clerk of the Supreme Court of the United States and filed in the Office of the Clerk of this Court on October 23, 1942.

Therefore, it is directed by this Court that the order heretofore made on June 8th, 1942, recalling mandate be set aside and the Clerk of the Court of Criminal Appeal of the State of Texas is hereby directed to issue mandate to have the judgment of this Court executed.