# CHARLESTON

EUREKA PIPE LINE COMPANY v. RIGGS, SHERIFF, ETC.

Submitted November 10, 1914.    Decided December 15, 1914.

1. SHERIFFS AND CONSTABLES—*Failure to Pay County Orders—Remedies—Mandamus.*

   The remedy given by section 39, chapter 39, Code 1899, against a sheriff, for failure to pay county orders drawn on him, that remedy not being as competent to afford relief on the very subject-matter, and one equally as convenient, beneficial, and effective, is not exclusive of the remedy by mandamus; it is cumulative only of that common law remedy. (p. 355).

2. CASES DISTINGUISHED.

   This case distinguished from the cases of *Ratliffe* v. *County Court*, 36 W. Va. 202, and *Welty* v. *County Court*, 46 W. Va. 460. (p. 357).

3. TAXATION—*Correction of Assessments—Order of Exoneration—Annulment—Notice.*

   An order of exoneration of taxes, and for repayment of taxes paid

upon an erroneous assessment, procured by the applicant and drawn on the sheriff, in his favor, pursuant to section 94, chapter 29, Code 1899, cannot be set aside or annulled by the county court, at a subsequent term, without notice or process to such applicant. Such order or rescission is absolutely void and of no effect. (p. 357).

4.   ABATEMENT AND REVIVAL—*Mandamus Against Sheriff—Enforcement of Order of Exoneration.*

A suit in mandamus against a sheriff by the holder of such order of exoneration, to compel the former to repay him excess of taxes collected, does not abate by the officer's death, resignation, or expiration of his term, if it be shown that, by the fault of the county court, or otherwise, he has failed to pay such order, and at the expiration of his term he has paid over to his successor the money which he should have paid to relator, and such sum has gone into the treasury to the credit of the county fund, the district fund, and to the boards of education. In such case the suit may be revived, and the incumbent in office cited into court and required to respond to the writ, as upon original process. (p. 358).

5.   SAME.

The facts in this case call for the proper application of the rule of practice just stated. (p. 358).

(ROBINSON, JUDGE, dissenting.)

Error to Circuit Court, Pleasants County.

Mandamus by the Eureka Pipe Line Company against B. F. Riggs, Sheriff, etc. Judgment for defendant, and plaintiff brings error.

*Reversed and remanded, with directions.*

*A. B. Fleming, Charles Powell,* and *Kemble White,* for plaintiff in error.

*G. D. Smith,* for defendant in error.

MILLER, PRESIDENT:

Error to the judgment of the circuit court denying a peremptory writ of mandamus requiring defendant to pay petitioner the amount of two orders of the county court made June 18, 1903, correcting assessments of its property for taxation for the years 1901 and 1902, and exonerating it therefrom, and ordering him to refund to it the excess of taxes paid him for those years, on such erroneous assessments, aggregating $1,450.00.

The proceedings were begun in the court below May 12, 1904, during respondent's term of office, which ended December 31, 1904, but the judgment complained of was not pronounced until the 24th day of April, 1913.

Respondent, by motion to quash, demurrer overruled, and answer, challenged jurisdiction by mandamus, and answered no funds, and pleaded the subsequent order of the county court, made at a subsequent special term of the court, held on August 18, 1903, but without notice or process to petitioner, whereby said court undertook to rescind, annul, and make void said orders of exoneration of June 18, 1903. Issues were joined on the pleas and the case on pleadings and evidence was submitted to the court in lieu of a jury with the result already indicated.

The orders of exoneration were regularly procured and made pursuant to section 94, chapter 29, Code 1899, then in force, and no substantial issue is made or supported by evidence as to the regularity and validity of these orders. Section 96, of the same chapter, provides: "Such order, delivered to the sheriff or other collecting officer, shall restrain him from collecting so much as is erroneously charged and, if the same has already been collected, shall compel him to refund the money, if such officer has not already paid it into the treasury, and in either case, when endorsed by the person exonerated, it shall be a sufficient voucher to entitle the officer to a credit for so much in his settlement with the auditor."

It is fully proven, we think, that after obtaining these orders, and before obtaining the alternative writ, they were duly presented to respondent for payment, and that payment was refused. Nor is there any doubt from the evidence that defendant had funds applicable, then or thereafter, and at the time his term of office expired, to pay same, and moreover, that he declined to accept the same tendered by relator in payment of its taxes for the year 1903. The validity of said order of rescission of August 18, 1903, was challenged by relator for want of jurisdiction in the court to make it, and for want of notice to it, and on other grounds.

The first question we will consider is, treating the orders of exoneration valid and unaffected by the subsequent order

of rescission, was there jurisdiction by mandamus, at the time the alternative writ issued and during his incumbency, to compel respondent to respect and pay the same? If valid, section 96, of chapter 29, of the Code, undoubtedly made it the duty of respondent to refund the excess taxes collected, and not paid into the state treasury. The record shows that as to the state and state school taxes, they were refunded by the auditor to relator, on presentation of certified copies of the orders to him, pursuant to section 97, of said chapter. But was petitioner relievable in mandamus?

At common law mandamus was always available to compel performance by public officers of their purely ministerial duties, where no other equally adequate and efficacious remedy was provided by statute. The rule, as now generally stated, briefly, is, that mandamus is not available where another specific and adequate remedy exists. But the other remedy must not only be adequate in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case, and as will enforce a right or performance of the duty, and such remedy can not be said to be fully adequate unless it reaches the end intended and actually compels performance of the duty in question. And as some of the books put it, the controlling question is not, has the party a remedy at law, but is that remedy fully commensurate with the necessities and rights of the party under all the circumstances of the particular case? 2 Spelling on Inj. and Ex. Rem., section 1375, says: "To supersede the remedy by mandamus the party must not only have a specific remedy, but one competent to afford relief upon the very subject-matter of his application, and one which is equally convenient, beneficial, and effective as the proceeding by mandamus." We have recognized this rule in *Dunlevy* v. *County Court*, 47 W. Va. 513, (3 syl.) and *Daniel* v. *Simms*, 49 W. Va. 554, 574, and have applied the rule in *State ex rel.* v. *Melton, Sheriff*, 62 W. Va. 253, and *State ex rel.* v. *Davis, Sheriff*, 74 W. Va. 261, 82 S. E. 207.

Remedy is given in such case against the sheriff and his sureties by action on his bond by section 39, of chapter 39, Code 1899, same as the corresponding section, Code 1913. But is this remedy exclusive or cumulative only of the com-

mon law remedy by mandamus? That remedy requires a suit regularly matured at rules, and prosecuted to judgment, and involves the hazards of execution and all the delays incident thereto. It is not as appropriate to the specific duty required, nor is it as speedy, prompt and efficacious as mandamus. In mandamus the remedy of contempt is incident to a violation of the order, and the court is competent thereon to punish disrespect of its order. Mandamus requires but a few days for maturity, and acts directly on the person of the officer, coercing him in the performance of his plain duty. Under the rule just announced, therefore, we do not think the remedy by action on the official bond is a bar to the remedy by mandamus.

In *Ratliffe* v. *County Court*, 36 W. Va. 202, and *Welty* v. *County Court*, 46 W. Va. 460, it was decided that as the county court had levied therefor, and placed the money in the hands of the sheriff, and issued orders on him to its creditor, it had done all that was required of it, and that mandamus by the creditor would not lie against it to compel another levy; that plaintiff's remedy was against the sheriff. Those cases, however, are not opposed to the views above expressed on the adequacy of the remedy given by statute in cases like this. We are of opinion, therefore, that relator may properly resort to mandamus, and is not limited to the remedy by action on respondent's official bond.

But remedy by mandamus requires a clear legal right. As we have already intimated the orders of exoneration made by the county court gave that clear right, unless annulled by the subsequent order made at the subsequent special term. What, then, was the effect of that subsequent order, if any, on the relator's right to the exemption? As we have already said, those orders of exoneration were regularly obtained by due proceedings under the statute, and while there is some intimation in the record that undue influence may have been exerted upon members of the court or the officers of the court, rendering the orders fraudulent, there is no plea and no evidence competent to support such a claim, and this court cannot indulge the presumption that fraud, not proven, entered into the action of the court. Those orders having been properly obtained entitled the relator to a refund of the

taxes exonerated; they constituted property or property rights, which could not be taken away except by some proper judicial process. It is not pretended that any process was served upon the relator, or waived by it, and the order itself discloses no appearance by anyone on its behalf or any waiver of process. So we think those orders had the force of judgments, and that after the term of the court at which they were entered had ended jurisdiction to set them aside or make them void was gone. After that it would take some direct proceeding properly instituted and prosecuted on due process served to accomplish such a result. The rules applicable to courts in general we think apply to county court judgments of this character. See *Ruhl* v. *Ruhl,* 24 W. Va. 279; *Crawford* v. *Fickey,* 41 W. Va. 544; *Morgan* v. *Ohio River R. Co.,* 39 W. Va. 19; *County Court* v. *O'Neal,* 42 W. Va. 295; *Bank* v. *Ralphsnyder,* 54 W. Va. 234, 235; *State* v. *Boner,* 57 W. Va. 81.

The point is also made, respecting said order of rescission, that it was entered at a special term not properly called. The views already expressed on the invalidity of the order renders it unnecessary to further consider this question.

The next question is, may the peremptory writ go after the expiration of relator's term of office, or against his successor, or does the suit abate? There is much contrariety of opinion among the decisions on this question. Our own decisions bearing on the question are rather conflicting, and most of them by a divided court. Generally, however, the cases hold with some uniformity that where the action was begun during his term, and the duty is personal to the officer, and involves no continuing duty on the office, government, municipality or other corporate body, of which he was or is the representative, the suit abates by his death, resignation, or the expiration of his term of office, and is not revivable against his successor. *Holdermann* v. *Schane,* 56 W. Va. 11; *Hebb* v. *County Court,* 49 W. Va. 734; *County Comrs.* v. *Sellew,* 99 U. S. 627; *U. S.* v. *Boutwell,* 84 U. S. 604; *Stock Co.* v. *Smith,* 165 U. S. 28; *Thompson* v. *U. S.,* 103 U. S. 480; *Caledonian Coal Co.* v. *Baker,* 196 U. S. 432. The cases bearing on the subject are about all collated in a note to *State* v. *Board of State Canvassers,* (Mont.) 4 Am. & Eng. Anno.

Cases, 73, 75. In our case of *Holdermann* v. *Schane, supra,* an election case, Judge BRANNON reviews most of our previous cases, in reaching the conclusion that neither the county commissioners, in office when the mandamus nisi issued, nor their successors, could after their terms of office had expired, be reached by the peremptory writ to compel them to reconvene and canvass the ballots of an election. Judge DENT, dissenting, reached the same result, but for other reasons. This decision is not in harmony with the opinion of Judge BRANNON in *Hebb* v. *County Court, supra,* at page 734. He there says: "This mandamus is not against those people individually, but against the canvassing board, a continuous legal body, though its members change, and, as the recount must be made by those new members, it was proper that the writ should go against them." Then he adds: "The Supreme Court of the United States has drawn the line of distinction that, where the writ is to go against the individual as an officer, expiration of his office ends the case; but where it is against a municipal corporation, or other corporation, or legal board having continuous existence, expiration of office makes no difference, and the mandamus goes against successors." Citing *County Comrs.* v. *Sellew, supra; Thompson* v. *U. S., supra; Stock Co.* v. *Smith, supra;* High on Extraordinary Rem., section 38; Merrill on Mandamus, section 238; *Alderson* v. *Commissioners,* 32 W. Va. 454. Then he says: "If the case had not reached final judgment; if it had been upon a mandamus nisi, and to be further heard,—those new commissioners should have been cited."

Our cases, in so far as they may be regarded as giving color to the doctrine of the early federal cases, that mandamus abates with the death, resignation, or removal from office of a public officer, are based on those early federal cases. The grounds on which they proceeded were that the neglected duty was personal to the officer, and that as the government was not liable, could not be coerced, the suit could not be revived against it or his successor.

We find much criticism of these federal decisions. For example, Mr. Merrill, in his work on Mandamus, in a note at page 300, says that it is difficult to reconcile them with the case of *Thompson* v. *U. S.* "In the latter case," he says,

"which was a proceeding to compel a town clerk to make and deliver to the supervisor of the town a copy of a judgment against the town, in order that the latter might include it in his tax levy, the court held that the proceedings did not abate by the resignation of the town clerk. The court, however, endeavored to distinguish this case from other cases in which it had held that the writ abated by such resignation. The court said that 'the cases in which it had been held by this court that an abatement takes place by the expiration of the term of office have been those of officers of the government, whose alleged delinquency was personal, and did not involve any charge against the government whose officers they were.' Why do not all cases of mandamus against officers fall under this category?" Moreover, Judge Bradley, in the Thompson Case, says: "But we cannot accede to the proposition that proceedings in mandamus abate by the expiration of the term of office of the defendant where, as in this case, there is a continuing duty irrespective of the incumbent, and the proceeding is undertaken to enforce an obligation of the corporation or municipality to which the office is attached. The contrary has been held by very high authority. *People* v. *Champion,* 16 Johns. (N. Y.) 60; *People* v. *Collins,* 19 Wend. (N. Y.) 56; High, Extr. Rem. sect. 38." And in another place he says: "We think that the proceedings have not abated either by the resignation of the clerk and the appointment of a successor, or by the expiration of his term of office, even if it sufficiently appeared that either of these contingencies had occurred."

The state courts, a few of them having statutes on the subject, have refused to follow these federal decisions, and the Congress of the United States, since the decision in *Thompson* v. *U. S.,* and as suggested by the Supreme Court in *U. S.* v. *Butterworth,* 169 U. S. 600, by Act of February 8th, 1899, chapter 121, 30 Stat. L., 822, enacted "That no suit, action, or other proceeding lawfully commenced by or against the head of any Department or Bureau or other officer of the United States in his official capacity, or in relation to the discharge of his official duties, shall abate by reason of his death, or the expiration of his term of office, or his retirement, or resignation, or removal from office, but, in such event, the

Court, on motion or supplemental petition filed, at any time within twelve months thereafter, showing a necessity for the survival thereof to obtain a settlement of the questions involved, may allow the same to be maintained by or against his successor in office, and the Court may make such order as shall be equitable for the payment of costs.''

We emphasize the fact, however, that before this federal statute was enacted, the court had in the Thompson Case modified greatly the rule of the earlier cases, and brought itself more in harmony with the decisions of the state courts. It is true, however, that the court continued afterwards to differentiate the Thompson Case and apparently to adhere to the old rule, as is manifest from the decision in the Butterworth Case.

We cannot in this opinion, already too long, review the decisions of the state courts at any length. They are referred to in notes and decisions already cited. We refer here to some of the leading ones relied upon by counsel. *People ex rel.* v. *Supervisor,* 100 Ill. 332; *State ex rel. Bushnell* v. *Gates, Clerk,* 22 Wis. 210; *State ex rel. Sloan, etc.* v. *Warner, Secretary of State,* 55 Wis. 271; *Schrader* v. *State ex rel.,* 157 Ind. 341; *The People ex rel. Barrett* v. *Bacon,* 18 Mich. 247; *People ex rel. Reeder* v. *Wexford County Treasurer,* 37 Mich. 351; *Clark* v. *McKenzie,* 7 Bush. (Ky.) 523; *State* v. *Puckett,* 75 Tenn. 709; *Hardee* v. *Gibbs, Auditor,* 50 Miss. 802, 806; *Fox* v. *Trinidad Waterworks Co.,* 7 Colo. App. 401. In the Reeder Case, the Michigan court says: ''The proceeding is one substantially against the county and not personally against the treasurer except as a means to work out redress against the county. The circumstance that the incumbency of the office of county treasurer has changed in the progress of the events connected with the matter in controversy is of no importance. The office itself has continued and has been and is represented by an officer, and that is enough for the purpose of the present proceeding.'' The Colorado case cited is a case very much like the one in hand. The trial was had after the officer's term had expired, and after he had turned over the funds, etc., to his successor. The holding was that it was erroneous to issue a writ commanding him to pay the warrants, and that no writ

could run against his successor until he had been brought in
as a party, and the judgment below was reversed and the
case remanded for that proceeding. The court in that case
referring to the decisions of the federal Supreme Court, says:
"A very broad distinction is recognized, even by that court,
between cases where the duty is a personal one, and where it
is to be performed in a representative capacity, and the
person on whom the writ is served really stands as and for
the corporation whose officer he is and whose duty may be
termed a continuing one, and therefore enforceable as against
the successor in office as well as against the individual towards
whom the writ was originally directed. *Commissioners* v.
*Sellew,* 99 U. S. 624; *Thompson* v. *United States,* 103 U. S.
480."

As we have no settled rule on the subject in this state, we
are disposed to hold, with the weight of the decisions of the
state courts, that where the office involved, as here, is a con-
tinuing one, and the obligation to the relator is one con-
tinuing against the office or the municipality represented by
him, and he or the corporate body continue liable in some
form for the payment of the obligation, the suit begun dur-
ing the term of office of the incumbent does not abate by his
death, resignation, or the expiration of his term of office, but
that his successor in either event may be summoned in by
rule or some appropriate process and the case continued
against him until the proper commands of the writ are satis-
fied. Some of the cases cited approve this practice.

The important question we have here, however, is, do the
facts in this case bring it within the rule of practice an-
nounced? The facts proven show that while the relator may
not have had funds in hand immediately on presentation of
the writ he declined to honor the orders in any way, that he
afterwards had funds applicable to the payment of the orders,
and if he had been disposed he could have paid them. He
may have been morally justified, but, as we hold, was not
legally justified in so doing, on account of said order of
rescission. Moreover, the evidence further shows that on the
expiration of his term of office he turned over to his successor
more than sufficient funds applicable to the payment of these
orders, and presumably the county, district, and district

school funds, to which this sum was properly credited, got the benefit of the moneys due the relator. It is argued, however, on the principles of *Ratliffe* v. *County Court,* and *Welty* v. *County Court, supra,* that as the county court had by the orders of exoneration appropriated sufficient moneys in the hands of the relator to pay the same, and, therefore, no further liability existed against it, or the district boards of education, and the liability, and the remedy, if any, was against the sheriff, we have no case for the application of the rule of practice laid down, so far as any continuing liability exists against it or the board of education is concerned. But as we view the case the county court is liable, and the county court and the boards of education are responsible morally and legally for having interfered with the rights of the relator in collecting the money upon said orders, and appropriated the money which should have been paid relator to their uses. It does not matter that the orders were issued during the incumbency of the respondent. They were orders drawn upon the sheriff of the county, and were payable out of any funds in his hands or in the hands of his successors, to which the excess taxes paid by the relator were credited, and in whatever year levied. This proposition, we think, is fully supported by *State ex rel.* v. *Melton, Sheriff,* and *State ex rel.* v. *Davis, Sheriff, supra.* So we think the case falls within the rule of practice enunciated, and that relator was entitled to a peremptory writ, not against the respondent, his term having expired, but against the incumbent in office whoever he may be.

We are of opinion, therefore, that the judgment should be reversed and the case remanded, with directions to rule into court the sheriff in office to show cause why the peremptory writ should not go against him, and to be further proceeded in in accordance with the principles enunciated herein and directions given, and we will so order.

*Reversed and remanded, with directions.*

Robinson, Judge *(dissenting):*

Deeming the decision herein contrary to precedent in this court, I dissent. The weight of authority seems to be that if pending proceedings in mandamus against an officer like a

sheriff his term expires, the proceedings abate and are not revivable against his successor. The point is squarely met and so decided in *Holderman* v. *Schane,* 56 W. Va. 11, an unanimous decision. The prior decision in *Hebb* v. *County Court,* 49 W. Va. 733, was by a divided court and is not a binding precedent. It was not so deemed when the court reached *Holderman* v. *Schane.* The opinion in the last named case is fully sanctioned. 26 Cyc. 421, 424. This court having years ago fully considered and decided this question as to which there is diversity of authority, the principle then established should not now be disturbed. Stability in precedent, unless assuredly wrong, should be maintained.