Norma Weatherby TURNER, Relator,

v.

Ward CHANDLER, District Judge, et al.,
Respondents.

No. 6993.

Court of Civil Appeals of Texas.

Texarkana.

July 18, 1957.

Dissenting Opinion July 25, 1957.

C. C. Renfro, J. Edward Johnson, Dallas, Bill Allcorn, Brownwood, for relator.

Fred Erisman, Longview, for appellees.

CHADICK, Chief Justice.

This case was filed as an original proceeding in the Court of Civil Appeals by Norma Weatherby Turner as relator, against Ward Chandler, District Judge, and Sid B. Turner, the party opposed to relator in litigation pending in the 123rd Judicial District of Texas, as respondents. Relator's petition alleges that Ward Chandler, prior to becoming Judge of the 123rd District Court, in such court as an attorney, represented Sid B. Turner in a divorce case numbered and styled D-520, Sid B. Turner, Plaintiff v. Norma Turner, Defendant, and that though divorce has been granted, the issue of child custody in said case is yet to be disposed of by such court and such issue and litigation is now pending for trial therein, and was so pending when the said Ward Chandler became Judge of the 123rd Judicial District on January 1, 1957. The relator petitions this court to grant a writ of mandamus compelling respondent Ward Chandler to certify his disqualification to act as judge in the above numbered and styled suit; or, in the alternative, that a writ of prohibition issue prohibiting Judge Chandler from making any further orders or sitting further in the trial of the case, together with certain other relief respecting a judgment of May 8, 1957, which will be discussed in the course of the opinion.

On May 7, 1957, a hearing was held before Judge Chandler upon respondent Sid B. Turner's motion to dismiss and strike the application and pleadings of Norma Turner for custody of the minor child filed in cause D-520 in the District Court of Panola County, filed July 26, 1955, and all subsequent motions in that regard. Previous to the hearing on May 7, 1957, the relator, Norma Turner, by counsel, had filed a suggestion of disqualification of Judge Chandler to sit in the trial of the case which was re-filed and again brought to the attention of the judge on the day of the hearing. Judge Chandler being of the opinion that the motion was a matter preliminary to the trial, declined to recuse himself and proceeded with the hearing, and on May 8, 1957, entered a judgment sustaining the motion, dismissed the pleadings and motions of relator, Norma Turner, seeking custody of her minor child and awarded custody of the minor to respondent Sid B. Turner.

On June 21, 1957, after the instant proceeding had been filed and before hearing thereon set for July 8th, Judge Chandler entered an order vacating the judgment of May 8th. On the basis of this latter action, it is argued in his behalf that the relief sought by relator has been granted and that this proceeding has become moot. This court can not agree to such a conclusion. McNeill v. Hubert, 119 Tex. 18, 23 S.W.2d 331, 333, a Commission of Appeals opinion adopted by the Supreme Court says that a case becomes moot " * * * when it appears that one seeks * * * judgment upon some matter, which, when rendered, for any reason can not have any practical legal effect upon a then existing controversy." Assuming, but reserving for

later discussion and disposition, that Judge Chandler was not disqualified to render and enter the judgment of May 8th and the order of June 21st, and that the latter order had the effect of vacating the former and re-instating the case on the docket as it stood prior to May 8th, it can not be said that the relief here sought of compelling the judge to certify his disqualification, or, in the alternative, prohibiting him from acting in the case, has been in any manner attained. Or that a judgment in this case would have no practical legal effect upon the controversy because the question of Judge Chandler's disqualification and right to act remain unchanged and undecided, and decision on that question will certainly have a practical legal effect.

The facts are undisputed that Ward Chandler's name appeared as counsel on pleadings filed in the divorce action and that he attended conferences of the court and counsel during the progress of the. case, sat at counsel table during the trial and testified as a witness for Sid B. Turner. No serious contention is made that Judge Chandler is not disqualified to sit as judge in a trial of the remaining child custody issue in the case. The Article 5, Sec. 11, Vernon's Ann.St. Constitution, State of Texas, provides that no judge shall sit in any case wherein he may have been counsel.

■ The undisputed facts show that Judge Chandler as an attorney represented *respondent* Sid B. Turner *in the same suit* and upon the same issues now pending for trial before him as a district judge. Such facts clearly disqualify him under the holding of various courts of this state. See Matlock v. Sanders, Tex.Civ.App., 273 S.W. 2d 956, no writ history; Ex parte Largent, 144 Tex.Cr.R. 592, 162 S.W.2d 419, certiorari denied Largent v. Reeves, 317 U.S. 668, 63 S.Ct. 72, 87 L.Ed. 536, rehearing denied 317 U.S. 713, 63 S.Ct. 443, 87 L.Ed. 568; Johnson v. Johnson, Tex.Civ.App., 89 S.W. 1102, no writ history.

■ Though this court finds no difficulty in holding that Judge Chandler is disqualified to sit as a judge in this litigation and is under a mandatory duty to certify his disqualification to the Governor by direction of Article 1885, Vernon's Ann.Tex. Civ.St. we do find some difficulty in determining the relief, if any, which may be afforded the relator in this court. In 1890, Chief Justice Stayton of the Supreme Court in Grigsby v. Bowles, 79 Tex. 138, 15 S.W. 30, 31, made this categorical statement:

"There being no law authorizing appeals to this court from a refusal of a district judge to certify to the governor his disqualification, this court has no jurisdiction to revise his ruling, and has no power to enforce, by the writ of *mandamus or otherwise,* the performance of such a duty; for it is only where such process is necessary to enforce the jurisdiction of this court that it has the power to issue it. City of Laredo v. Martin, 52 Tex. 548; Churchill v. Martin, 65 Tex. 367." (Emphasis added.)

The Supreme Court jurisdiction then, as now, was limited by Article 5, Sec. 3 of the Constitution to issuance of writs of mandamus, procedendo, certiorari and other writs *as may be necessary to enforce its jurisdiction.* Sec. 6 of the same Article confers appellate jurisdiction co-extensive with the limits of the respective districts upon the Courts of Civil Appeals in all civil cases of which the district courts or county courts have original or appellate. jurisdiction, under such restrictions or regulations as may be prescribed by law,, and such courts are given such other jurisdiction, original and appellate, in such cases and circumstances as the Legislature may prescribe. The Legislature under this constitutional grant of authority enacted Article 1823, V.T.C.S., which provides, "Said courts and the judges therof may issue writs of mandamus and all other writs *necessary to enforce jurisdiction of said*

*courts,"* and Article 1824, providing that the writ of mandamus may issue from said courts to compel a district or county court to proceed to trial and judgment in a case, as well as Article 1735a making the writ available to compel officers of political parties to perform their duties. Aside from these articles mentioned, the Legislature has not further implemented the authority of Courts of Civil Appeals in this regard nor seen fit to authorize Courts of Civil Appeals to issue writs of mandamus under any other circumstances. So it appears that Courts of Civil Appeals are now limited in their authority to issue writs of mandamus to the same extent that the Supreme Court was at the time of the opinion in Grigsby v. Bowles, supra, in that, with the exceptions noted, the Courts of Civil Appeals may only issue the writ *in aid of its own jurisdiction.*

■■ Such well-respected authority as American Law Reports, Annotated, lends support to the construction of the Constitution and statutory provision here made that the remedy of mandamus is not available to compel a district judge to certify his disqualification. In 45 A.L.R.2d 951, it is said:

"A few jurisdictions subscribe to the view that mandamus is not available as a remedy to compel a judge to recuse himself or to certify his disqualification. * * *

"There is a dearth of Texas authority on the question under consideration, but the few cases within the scope of this annotation lead to the conclusion that in that state mandamus is not the remedy to compel a judge to disqualify himself or to certify his disqualification."

This text indicates that the great weight of authority in other jurisdictions throughout the United States favors the view that such writ is available and that only Texas, Kentucky, Idaho, Louisiana and the 7th U.S.C.

C.A. adhere to the view expressed here, but this court does not feel at liberty to depart from the rule as the Supreme Court of Texas has heretofore laid it down. Grigsby v. Bowles was discussed in Schintz v. Morris, 89 Tex. 648, 35 S.W. 1041, where a slightly different question was involved, and Chief Justice Gaines commented upon and approved the rule stated and to that extent reaffirmed it. Thus the Supreme Court of Texas has twice denied its right to compel a district judge by writ of mandamus to certify his disqualification to the governor.

This construction of the Constitution of the State and enactments of the Legislature may be eloquently argued against on the basis that such construction leaves a litigant without a remedy in cases where a patently disqualified judge refuses to certify his disqualification and compels a party to undergo the hazards of a trial before a disqualified judge as well as being unnecessarily put to the effort and expense attached to abortive litigation. There is no good answer to such argument except that given by Chief Justice Major in the case of Korer v. Hoffman, 7 Cir., 212 F.2d 211, 215, 45 A.L.R.2d 930, where a similar proposition was under discussion and he said:

"This is an appealing argument to which we know of no good answer other than that it is made in the wrong forum. In response to a similar contention, the court in Gulf Research & Development Co. v. Leahy, 3 Cir., 193 F.2d 302, 304, stated: 'The mere fact that the petitioners will be put to the inconvenience and expense of what may prove to be a wholly abortive trial is an argument which might be addressed to Congress in support of legislation authorizing interlocutory appeals but does not constitute ground for invoking mandamus power.' "

Until the Legislature grants this court authority to issue writs of mandamus to compel inferior court judges to certify their disqualification, this court is without au-

thority by mandamus to correct what could develop into an oppressive wrong. This being an intermediate appellate court, bound by and without authority to revise or override the decisions of the Supreme Court, this court has no choice other than to follow the precedents set by the Supreme Court.

■ It follows from the findings stated that the orders made by Judge Chandler in case D–520 dated May 8th and June 21st, 1957, are a nullity and that the case stands on exactly the same footing that it stood prior to the entry of either or both orders, because as said in Vol. 25, Tex.Jur., p. 301, Sec. 54:

> "Disqualification deprives a judge of authority to enter any material order or judgment in the case, his incapacity extending to any action which involves the exercise of judicial discretion."

This further notice is given these orders only because there is an alternative prayer for a writ prohibiting Judge Chandler from acting in the case, and entry of these orders are some evidence of a belief on his part that he is not disqualified to make additional orders in the case involving his judicial discretion.

The authority of this court to grant a writ of prohibition is subject to some doubt for the very reasons that have been given which prevent this court from issuing a writ of mandamus. However, the common law origin of the writ, its function and constitutional background as discussed by Chief Justice Cureton of the Supreme Court in City of Houston v. City of Palestine, 114 Tex. 306, 267 S.W. 663, leads to the conclusion that such remedy is available under the circumstances of this case. Also it is said in Lowe & Archer's Texas Practice, p. 488, Sec. 515, that:

> "Once the jurisdiction of the Court of Civil Appeals is properly invoked, whether by appeal, or through an orig-

inal proceeding, that Court has full power to issue all writs, including the writ of prohibition, necessary to protect, enforce or effectuate such acquired jurisdiction."

and cites many cases in support of the quoted text.

■ The prayer for relief insofar as mandamus is concerned is limited and confined solely to a prayer that this court issue its writ compelling Judge Chandler to certify his disqualification. Of course, as previously discussed, this court can not grant that writ. However, as previously mentioned, Judge Chandler has in the past entered void orders and persists in his refusal to recuse himself, it therefore appears that the interest of justice will be best served by the issuance of a writ of prohibition prohibiting Judge Chandler from making any further orders in cause No. D–520, except to certify his disqualification pursuant to Article 1885, V.T. C.S., or to make such ministerial orders as the parties may jointly request in writing, or as requested of him by the judge who may sit in the trial of the case.

It is so ordered.

FANNING, J., concurs.

DAVIS, Justice (dissenting).

I concur in the granting of the writ of prohibition in event this court is without authority to grant a writ of mandamus. I dissent from the refusal to grant a writ of mandamus and will file my dissent later, because I think this is a case that needs immediate attention and to hold the decision for dissent will only delay this matter.

DAVIS, Justice.

I dissent from the opinion of the majority in this case in holding that this court

is without authority to grant the writ of mandamus. In doing so, it is my purpose to point out that in the opinion of Judge Stayton in the case of Grigsby v. Bowles, the Supreme Court had before it for consideration an application for a writ of mandamus by way of an attempted appeal from an order by a district judge refusing to disqualify himself. Then, as now, there is no right of appeal from such order. Naylor v. Naylor, 60 Tex.Civ.App. 606, 128 S.W. 475; Texas Bank & Trust Co. of Dallas v. Clay, Tex.Civ.App., 257 S.W.2d 774, no writ history; Sec. 17:03, McDonald Texas Civil Practice, beginning at top of page 1309, Vol. 4; Pioneer American Ins. Co. v. Knox, Tex.Civ.App., 199 S.W.2d 711, error refused.

I have studied the Grigsby opinion as carefully as I know how, and as I view the opinion of Judge Stayton, he meant to say: "There being no law authorizing appeals to this court from a refusal of a district judge to certify to the governor his disqualification, this court has no jurisdiction (in such attempted appeal) to revise his ruling, and has no power to enforce, by writ of mandamus or otherwise, the performance of such duty (in such attempted appeal). [79 Tex. 138, 15 S.W. 31.]" (Phrases in parentheses added.)

Now, I admit, that neither the Constitution nor the statutes specifically say: "The Supreme Court or the Courts of Civil Appeals have the right, by mandamus, to compel disqualified trial judges to certify their disqualification." Yet, at the same time, there is no provision of the Constitution nor the statutes that specifically says that the Supreme Court or the Courts of Civil Appeals have any authority to issue a writ of prohibition in such cases; therefore, I contend that there is just as much authority to justify the issuance of the writ of mandamus to complete the certification of disqualification as there is to prohibit the judge from taking further action in the case; and, the ends of justice would be best served by the issuance of the writ of mandamus.

Texas law was adopted from the common law of England, Article 1 of V.A.T.C.S. provides:

"The common law of England, so far as it is not inconsistent with the Constitution and laws of this State, shall together with such Constitution and laws, be the rule of decision, and shall continue in force until altered or repealed by the Legislature."

As will be noted from reading the Article, it provides that the common law, *together with the Constitution and laws of this state shall be the rule of decision* of the courts of this state. The writ of mandamus had its origin in England under the common law. Its history and purposes are fully discussed in 55 C.J.S. Mandamus § 1 et seq., beginning on page 15. At page 17 we find this statement: "Except where it has been otherwise provided by statute, mandamus is essentially and exclusively a common law remedy * * *". Beginning on page 19 the writ of mandamus is described as "an extraordinary remedy" that "can be used only in cases of necessity where the usual forms of procedure are powerless to afford relief; where there is no other clear, adequate, efficient and speedy remedy." At page 21, the writ of mandamus is distinguished from other remedies and it is pointed out that the writ is used to compel action and to coerce the performance of a preexisting duty. It is a writ requiring specific performance. And the writs of mandamus and prohibition are related remedies. See also 55 C.J.S. Mandamus § 51, p. 85. The writ of mandamus finding its origin in the Common Law, and that authority *not* being "altered or repealed" by either the Constitution or the Legislature, all the authority necessary to grant the writ is provided and *authorized by the Common Law.*

In Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063, 1068, Chief Justice Cureton, speaking of the authority of courts to issue the writ of mandamus, had this to say:

"* * * To supersede the remedy by mandamus authorized by the organic law, and specially provided by statute (Vernon's Ann.Civ.St. 1925, art. 1734), there must exist, not only a remedy by appeal, but the appeal provided for must be competent to afford relief on the very subject-matter of the application, equally convenient, beneficial and effective as mandamus. Gulf, C. & S. F. Ry. Co. v. Muse, 109 Tex. 352, 362, 207 S.W. 897, 4 A.L.R. 613; Spelling on Extraordinary Relief, Vol. 2, § 1375; Eureka Pipe Line Co. v. Riggs, 75 W. Va. 353, 83 S.E. 1020, Ann.Cas.1918A, 995, 996. 38 Corpus Juris, p. 561, § (32) 2; High on Extraordinary Legal Remedies (2d Ed.) § 17; Terrell v. Greene, 88 Tex. 539, 31 S.W. 631; International Water Co. v. City of El Paso, 51 Tex.Civ.App. 321, 112 S.W. 816; St. Louis, S. F. & T. Ry. Co. v. Smith, Tex.Civ.App., 99 S.W. 171; Gaines v. Rugg, 148 U.S. 228, 243, 13 S.Ct. 611, 37 L.Ed. 432.

"Mr. Spelling correctly states the rule as follows:

"'In order that the existence of another remedy shall constitute a bar to relief by mandamus, such other remedy must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the circumstances of the particular case. It must be such a remedy as is calculated to afford relief upon the very subject of the controversy. For, if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy. * * *'" (Emphasis added.)

The big question is whether or not this court by granting the writ of prohibition has actually afforded the petitioner any relief at all. If this court does not have the authority to grant a writ of mandamus, it does not have the authority to grant the writ of prohibition. This fact is questioned by Judge Chadick in his majority opinion.

Article 1824, V.A.T.C.S., specifically gives the Courts of Civil Appeals or any judge thereof the authority to issue the writ of mandamus to compel a district or county judge to proceed to trial and judgment. The question arises: Is the certification of disqualification of a disqualified judge a necessary step to a trial and disposition of the case? There can not be any but an affirmative answer. If the certification of disqualification is an essential and mandatory step to securing the trial of a case, why do we not have authority to issue the writ of mandamus to secure the trial of a case by a qualified judge? To hold otherwise creates a purpose to delay justice grossly contrary to the ancient maxim, "Justice delayed is justice denied."

It has been held in other common-law states that the writ of mandamus is a more expeditious and suitable remedy than the writ of prohibition in determining whether or not a judge is disqualified. Payne v. Lee, 222 Minn. 269, 24 N.W.2d 259. As a matter of fact, the writ of prohibition in this case could accomplish exactly nothing. If the respondent Chandler should continue to refuse to certify his disqualification, the petitioner would have no remedy to get a trial of her case, except to bide the time until she could probably have the respondent Chandler removed by impeachment proceedings; Article 15, Sec. 2, V.A. Tex. Constitution; removed by address of the Governor, Article 15, Sec. 8, V.A.T.C.; or, by petition for removal from office to

the Supreme Court of Texas; Article 15, Sec. 6, V.A.T.C.; In re Laughlin, 153 Tex. 183, 265 S.W.2d 805.

It is not my purpose to decline to follow precedent as set by the Supreme Court of Texas, but I humbly and earnestly believe that the wrong construction has been placed upon the opinion of Judge Stayton in the Grigsby case. And, too, I believe that the issues involved in the case in the District Court of Panola County are of greater importance than of any issue that could be raised in any other character of case of which the district court has jurisdiction, viz., that of the best interests and welfare of a minor child. The mother of this child has attempted to get that question adjudicated in the normal and legal way provided by the Constitution and laws of this state since December 6, 1954. The respondent Sid B. Turner, a lawyer, who should recognize his duty to the legal profession and the judiciary to see that all cases are tried with expediency, has not done anything, as far as the records reveal, except what would prevent an actual trial of the issue of child custody upon its merits, even to the extent of attempting to appeal from a non-appealable order. Turner v. Turner, No. 6909 upon the docket of this court; dismissed December 6, 1956. Such practice is a reflection upon the legal profession, and also invokes unjust criticism upon the judiciary. Respondent Sid B. Turner being a lawyer, he should certainly know whether or not he has a just and legal defense to the petitioner's cause of action and his delaying tactics create a strong suspicion that he has no faith in his defense to the petitioner's claim of right to the care, custody and control of the child. Further, the older the child grows, while this litigation is pending, the more capable she will become of comprehending the fact that she is the center of vicious and bitter litigation, and this could have a serious effect upon her.

Under the state of the record, with the writ of prohibition having been granted, there is one other avenue by which the petitioner may be able to get a qualified judge to try her lawsuit. Senate Bill No. 86, Chapter 408, Vernon's Texas Session Law Service, 55th Legislature, 1957, Reg. Sess., which is an amendment to Article 200a, V.A.T.C.S., gives the presiding judge of an administrative judicial district specific authority to assign district judges to other districts for the trial of cases, as well as retired district judges who have consented to be subject to assignment. In view of the importance of this litigation, the Presiding Judge of the First Administrative Judicial District, upon being apprised of the facts of this case, should immediately assign a qualified judge to try and dispose of the case should respondent Chandler fail to certify his disqualification immediately.

Fully recognizing my limitations, I earnestly believe this court has the authority to issue the writ of mandamus prayed for. If not, this serious defect in the law should be remedied at the earliest possible date. Whether or not the petitioner is entitled to recover the care, custody and control of her minor child, she is entitled to her day in court *now*, not four or five years hence.

Respectfully submitted.