662 S.E.2d 522

**263 TOWING, INC., a West Virginia Corporation, Petitioner Below, Appellee**

v.

**MARCUM TRUCKING COMPANY, INC., a West Virginia Corporation, Petitioner Below, Appellee**

v.

**Lonnie Hannah, Sheriff of Mingo County; Mingo Office of Emergency Services; and the County Commission of Mingo County, Respondents Below**

**Lonnie Hannah, Sheriff of Mingo County, Appellant.**

**No. 33382.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 2008.

Decided March 14, 2008.

W.Va. 744, 38 S.E.2d 346 (1946).'').

Letitia Neese Chafin, Williamson, WV, for the Appellant.

Michael O. Callaghan, John H. Tinney, Jr., James K. Tinney, The Tinney Law Firm, P.L.L.C., Charleston, WV, for the Appellees, Marcum Trucking Company, Inc. and 263 Towing, Inc.

Glen R. Rutledge, Williamson, WV, for the Appellee, County Commission of Mingo County.

John R. Teare, Jr., Bowles Rice McDavid Graff & Love, L.L.P., Charleston, WV, for Amicus Curiae, The West Virginia Sheriff's Association.

ALBRIGHT, Justice.

Lonnie Hannah, as the Sheriff of Mingo County (hereinafter referred to as "sheriff"), appeals from judgments of the Circuit Court of Mingo County rendered on October 16, 2006,[1] refusing to vacate earlier rulings granting the mandamus relief sought by 263 Towing, Inc. (hereinafter referred to as "263 Towing") and Marcum Trucking Company, Inc. (hereinafter referred to as "Marcum Trucking"). The final orders granting the writs of mandamus were both entered on October 3, 2006,[2] and each directed the sheriff to sign checks made out to each of the companies, which had been approved by unanimous vote of the Mingo County Commission,[3] for flood recovery services, and further granted attorney fees to 263 Towing and Marcum Trucking. Additionally, the order in the Marcum Trucking case included an award of prejudgment interest.

The sheriff maintains that the lower court erred by finding that he was under a legal duty to sign the checks in question, and that assessment of attorney's fees and prejudgment interest were inappropriate in this case. After studying the record, briefs and arguments of the parties, brief of the West Virginia Sheriffs' Association as amicus curiae, and the relevant statutory and case law, we agree that error has occurred as more fully explained below.

## I. Factual and Procedural Background

Due to the severe flooding in Mingo County in the spring of 2004, the Mingo County Commission and/or its Office of Emergency Services contracted with 263 Towing and Marcum Trucking to perform emergency clean-up work. Both entities submitted invoices to the county commission for the hauling and excavation work performed. All of the invoices at issue were approved by the county commission, which in turn forwarded the checks to the sheriff for his signature and payment. The sheriff refused to sign the checks.

Marcum Trucking and 263 Towing filed separate petitions for mandamus in the circuit court seeking orders requiring the sheriff to sign the checks. Identical responses were filed by the prosecuting attorney on behalf of the sheriff in both actions and in which it was asserted that the sheriff did not sign the checks because the companies had not supplied legally sufficient proof of the services rendered at the time the invoices had been submitted. The sheriff's responses further claimed that his reason for questioning the legitimacy of the invoices was supported by the federal investigations being conducted by the Office of the United States Attorney, the Federal Bureau of Investigation, and the Fraud and Abuse Investigations Division of the Inspector General's Office involving criminal violations in connection with the contested invoices. The sheriff's response in both cases maintained that he rejected payment of the invoices for good cause and in fulfillment of "his obligation as a law enforcement officer to prevent crime and protect the Mingo County Commission from being victimized." Shortly after the responses were filed, the prosecuting attorney withdrew as counsel to the sheriff in response to

1. This matter is before us as a joint appeal although the record does not reflect that the two underlying civil actions were formally consolidated. Since the lower court essentially handled the cases as if they were consolidated because the issues raised are virtually identical, we will treat the cases as consolidated for appeal purposes.

2. As an earlier order had been entered in the Marcum Trucking matter by the court below on September 29, 2006, the October 3, 2006, order

affecting Marcum Trucking was designated as "Amended Final Order."

3. Although the County Commission of Mingo County was named as a respondent to the actions brought below, it joins 263 Towing and Marcum Trucking in supporting the lower court's issuance of the writs of mandamus. The Mingo County Office of Emergency Services was also named as a respondent in the petitions for the writs, but it has not participated in the appeal now pending.

the objection which both companies had raised to the prosecutor's involvement in the case. Thereafter the sheriff proceeded pro se because the county commission refused his request for legal representation.

During the proceedings in the court below, it was established that 263 Towing had voluntarily reduced its total bill by $113,000. The sheriff maintained that this action was indicative of the over-billing he alleged; 263 Towing maintained it was willing to settle the claim for less money just to have the two-year-old matter resolved. Both companies claimed that the county commission had approved all of the invoices at least once and the sheriff had no authority to question the action of the county commission. The companies maintained that the sheriff had nothing more than a ministerial duty to sign, the checks once they were issued by the county commission.

By separate final orders entered by the circuit court on October 3, 2006, mandamus relief was granted to both businesses. Among the lower court's findings related in these orders were the conclusions that the sheriff's legal duty and statutory responsibility as county treasurer to release payment was clear and unequivocal, and the sheriff failed to provide evidence substantiating his claims in the two and one-half years that had elapsed since the county commission approved the invoices. The orders additionally related that an investigation discredited the sheriff's bald assertion that Marcum Trucking had used home confinement personnel to perform the work detailed on the invoices. The orders reflected that no criminal indictments were pending against 263 Towing, and that in March 2006 the prosecution of an indictment against Marcum Trucking was ended by entry of a nolle prosequi. The conclusion that neither the sheriff nor the circuit court had the authority to veto an expenditure approved by the commission appeared in both orders. Consequently, in the 263 Towing action the lower court commanded the sheriff to sign the check approved by the county commission in the amount of $175,200, denied award of prejudgment interest and awarded $1,575 in attorney fees. The order involving Marcum Trucking directed the sheriff to sign the $103,275 check approved by the county commission, and awarded both $9,027.19 in prejudgment interest and $4,214 in attorney fees. It was specified in the order that the interest and attorney fees were to be paid out of the sheriff's department budget.

Thereafter, the sheriff retained counsel who on October 4, 2006, filed a motion to vacate the order granting mandamus relief in each of the cases. Both motions were denied. The sheriff then moved this Court to remove the circuit court judge from the case, which motion was also denied.

The sheriff signed the checks as directed by the orders, but did not pay the amounts awarded to the businesses for prejudgment interest and attorney fees.[4] The sheriff also petitioned for appeal of these matters, which appeal was granted by this Court's order dated April 19, 2007.

## II. Standard of Review

Appeal in this case is taken from the grant of mandamus relief. We summarized the standard of review this Court employs when considering the propriety of a lower court's grant of mandamus in *McComas v. Board of Education of Fayette County,* 197 W.Va. 188, 193, 475 S.E.2d 280, 285 (1996), as follows:

> Our standard of review in mandamus actions was ... stated in *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995), and in *State ex rel Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996). In Syllabus Point 1 of Staten, supra, we found: "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo." However, "[w]e review a circuit court's underlying factual findings under a clearly erroneous standard." *Staten v. Dean,* 195 W.Va. at 62, 464 S.E.2d at 581. This means, as we stated in *Cooper,* that "we consider *de novo* whether the legal prerequisites for mandamus relief are

---

4. Upon agreement of the parties, this Court granted a stay of action on the remaining prejudgment interest and attorney fee awards pending appeal as long as the sheriff's performance bond remained in effect.

present." 196 W.Va. at 214, 470 S.E.2d at 168. As to other underlying issues, we review either for an abuse of discretion or under a clearly erroneous standard.

The year following the release of the opinion in *McComas,* we further addressed the standards applied to an appeal of final orders granting mandamus relief in *O'Daniels v. City of Charleston,* 200 W.Va. 711, 715, 490 S.E.2d 800, 804 (1997), by stating:

> The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is *de novo.* Syllabus Point 1, *Staten v. Dean,* 195 W.Va. 57, 464 S.E.2d 576 (1995). We review a circuit court's underlying factual findings under a clearly erroneous standard. 195 W.Va. at 62, 464 S.E.2d at 581. We also review conclusions of law under a clearly erroneous standard.

■ We are also mindful that relief in mandamus is only proper if the following three prerequisites coexist: "(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, in part, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

We proceed in applying these standards during our examination of the specific errors alleged to have occurred in this case.

### III. Discussion

■ As an initial matter, we agree with the sheriff that his signing of the checks issued by the county commission as directed by the circuit court orders does not render the questions raised on appeal moot. The issues advanced by the sheriff involve whether the lower court erred by issuing a writ of mandamus on the ground that the sheriff had a nondiscretionary statutory duty to sign the checks at issue and whether the award of prejudgment interest and attorney fees were appropriate under the circumstances.

■ We established in syllabus point one of *Israel by Israel v. West Virginia Secondary Schools Activities Commission,* 182 W.Va. 454, 388 S.E.2d 480 (1989), that the following three factors are considered by this Court when faced with the decision of whether to address a technically moot issue:

> [F]irst, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

*Id.* at Syl. Pt. 1, in part. Here, the issues of attorney fees and prejudgment interest are collateral consequences which satisfy the first element set forth in *Israel.* The remaining two factors are also present in the instant case since this Court has not heretofore addressed the responsibilities of county officers pursuant to the provisions of the Prompt Pay Act of 1995, and it is likely that the same issues of public interest regarding the statutory responsibilities of these officers will recur.

The sheriff also maintains that mandamus relief is not proper under the circumstances of this case since none of the three aforementioned essential elements set forth in *Kucera* for a writ of mandamus to issue exist. Specifically, the sheriff maintains that: (1) neither company had a legal right to the relief sought; (2) as the respondent, he did not have a duty under the Prompt Pay Act of 1995, West Virginia Code § 7–5–7 (1995) (Repl.Vol.2006), to sign the checks approved by the county commission; and (3) mandamus relief was unwarranted because the companies had another adequate remedy available to them by filing an action against the sheriff and his performance bond.

■ Contrary to the assertion of the sheriff, the petitioners' legal right to seek relief through mandamus is firmly established in West Virginia Code § 7–5–9 (1923) (Repl.Vol. 2006), which clearly provides that:

> When any order on the county treasury has been presented to the sheriff without obtaining payment, or the sheriff has evad-

ed or hindered such presentation, it shall be lawful for the person entitled to the money due on such order, judgment, or decree, to petition any court having jurisdiction, or a judge thereof in vacation, for a writ of mandamus. . . .

As named parties on unpaid orders, the companies had a statutory right to seek enforcement of the order by mandamus. This statutory provision also negates the argument that the third *Kucera* element is not satisfied in this case because the Legislature has seen fit to grant the right to seek mandamus relief under the circumstances at hand. Additionally, in *Eureka Pipe Line Co. v. Riggs*, 75 W.Va. 353, 83 S.E. 1020 (1914), this Court determined that the remedy of an action on a public official's performance bond did not preclude a party from seeking mandamus relief. *Id.* at 357, 83 S.E. at 1022. In reaching this conclusion, the Court in *Eureka Pipe Line* reasoned that, "[a]t common law mandamus was always available to compel performance by public officers of their purely ministerial duties, where no other equally adequate and efficacious remedy was provided by statute." *Id.* at 356, 83 S.E. at 1021. Finding the action to recover on a performance bond provided by statute neither compelled the performance of a ministerial duty nor was it as "speedy, prompt and efficacious as mandamus," the Court in *Eureka Pipe Line* found mandamus as a cumulative available remedy to an action on a performance bond. *Id.* at 357, 83 S.E. at 1022. Moreover, the businesses in the instant case are not availing themselves of the right to relief in mandamus pursuant to the common law but rather pursuant to the statutory right to such remedy afforded them by the Legislature. Given the general statutory right to seek mandamus, the presence or absence of other remedies is immaterial.

■ The more significant question presented in this case is whether the sheriff had a ministerial, nondiscretionary duty to sign the checks issued by the county commission. Citing *Damron v. Ferrell*, 149 W.Va. 773, 143 S.E.2d 469 (1965), Appellees maintain that a sheriff's responsibility with regard to pay orders issued by a county commission is purely ministerial and "[m]andamus lies to require the discharge by a public officer of a nondis-

cretionary duty." Syl. Pt. 3, *State ex rel Greenbrier County Airport Authority v. Hanna*, 151 W.Va. 479, 153 S.E.2d 284 (1967). The sheriff argues that his duty with regard to signing pay orders is governed by the Prompt Pay Act of 1995 [hereinafter referred to as "PPA"], which directs sheriffs to sign pay orders only when they are issued for "legitimate uncontested invoice[s]." W. Va.Code § 7–5–7. The sheriff contends that he acted within the construct of the statute since under the terms of the PPA his duty to sign the checks was suspended when the information he obtained led him to believe that the payment orders were based on inaccurate and therefore illegitimate invoices.

■ This Court has explained that "[a] non-discretionary or ministerial duty in the context of a mandamus action is one that is so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of its performance." Syl. Pt. 7, *Nobles v. Duncil*, 202 W.Va. 523, 505 S.E.2d 442 (1998). In order to determine whether a sheriff's duty to sign pay orders authorized by county commissions is without discretion, we look to the language of the PPA which reads:

(a) Any properly registered and qualified vendor who supplies services or commodities to any county, or agency thereof, shall be entitled to prompt payment upon presentation to that county or agency of a *legitimate uncontested invoice.*

(b)(1) Except as provided in subdivision (2) of this subsection, for purchases of services or commodities made on or after the first day of July, one thousand nine hundred ninety-five, a check shall be issued in payment thereof within sixty days after a *legitimate uncontested invoice* is received by the county or agency receiving the services or commodities. Any check issued after such sixty days shall include interest at the current rate, as determined by the state tax commissioner under the provisions of section seventeen-a [§ 11–10–17a], article ten, chapter eleven of this code, which interest shall be calculated from the sixty-first day after the invoice was received by the county or agency until

the date on which the check is mailed to the vendor: Provided, That this section shall not apply if payment cannot be made within the sixty-day period because of unforeseen budgetary constraints.

(2) For purposes of this subsection, an invoice shall be deemed to be received by a county, or agency thereof, on the date on which the invoice is marked as received by the county or agency, or the date of the postmark made by the United States Postal Service as evidenced on the envelope in which the invoice is mailed; whichever is earlier, unless the vendor can provide sufficient evidence that the invoice was received by the county or agency on an earlier date: Provided, That in the event an invoice is received by a county, or agency thereof, prior to the date on which the commodities or services covered by the invoice are delivered and accepted or fully performed and accepted, the invoice shall be deemed to be received on the date on which the commodities or services covered by the invoice were actually delivered and accepted or fully performed and accepted.

(c) The sheriff shall deduct the amount of any interest due for late payment of an invoice from any appropriate account of the agency responsible for the late payment: Provided, That if two or more agencies are responsible for the late payment, the sheriff shall deduct the amount of interest due on a pro rata basis.

(d) The county or agency initially receiving a *legitimate uncontested invoice* shall process the invoice for payment within ten days from its receipt. Failure to comply with the requirements of this subsection shall render the county or agency liable for payment of the interest mandated by this section when there is a failure to promptly pay a *legitimate uncontested invoice:* Provided, That a county agency shall not be liable for payment of interest owed by another county agency under this section.

(e) Any other county agency charged by law with processing a county agency's requisition for payment of a *legitimate uncontested invoice* shall either process the claim or reject it for good cause within ten days after the agency receives it. Failure

to comply with the requirements of this subsection shall render the county agency liable for payment of the interest mandated by this section when there is a failure to promptly pay a *legitimate uncontested invoice:* Provided, That a county agency shall not be liable for payment of interest owed by another county agency under this section.

(f) For purposes of this section, the term "agency" means any agency, department, board, office, bureau, commission, authority or any other entity of county government.

(g) This section may be cited as the "Prompt Pay Act of 1995".

W.Va.Code § 7-5-7 (emphasis added).

 While we acknowledge the statute as controlling of the issue at hand, we find the reasoning in case law decided prior to the enactment of the PPA particularly useful in our study of the case sub judice. In *State ex rel. Damron v. Ferrell,* 149 W.Va. 773, 143 S.E.2d 469 (1965), this Court addressed a situation where a sheriff had indicated he would not sign a check even though it had been approved by the county commission. The sheriff in *Damron* had questioned the legality of the pay order since it included payment for services that were performed before proper authorization had been obtained. The writ was not granted in that case because "[m]andamus will not lie to compel the performance of an illegal or unlawful act." *Id.* at Syl. Pt. 2. This Court further held in syllabus point one of *Damron* that "[a] sheriff, as ex officio treasurer of a county, acts in an administrative capacity and has no discretion in making payment of claims against the county upon a lawful order of the county . . . [commission]." *See also State ex rel Trust Co. v. Melton,* 62 W.Va. 253, 262–63, 57 S.E. 729, 732 (1907) ("No doubt, invalidity of the orders [to pay], if issued contrary to law, would have availed the sheriff as a defense. . . ."). Thus, at least thirty years before the Prompt Pay Act was enacted, this Court acknowledged that sheriffs are charged with what appear to be antithetical responsibilities for signing pay orders approved by the county commission. The sheriff has a nondiscretionary duty to

sign the checks authorized by the county commission unless the sheriff reasonably believes an illegal or unlawful act is somehow involved with the payment. The enactment of the PPA, with the conditional language of "legitimate uncontested invoice," carries forward the premise established in our case law that the duty of sheriffs to sign pay orders authorized by county commissions is nondiscretionary **only** when they are based on invoices which reflect legitimate and unquestioned costs. W. Va.Code § 7–5–7.

■ The PPA is silent regarding standing to contest and question the legitimacy of such invoices, and the statute does not otherwise identify the forum or process by which such contests are to be raised and resolved. The lower court apparently took this silence to mean that the sheriff had no authority to refuse release of funds once the county commission approved and ordered payment of the invoices. We disagree with this conclusion since it ignores the repeated use of the conditional phrase "legitimate uncontested invoice" throughout the PPA and thus discounts the rule of statutory construction requiring courts to give some effect to every part of a statute.[5] Under the express terms of West Virginia Code § 7–5–7(e), sheriffs have a nondiscretionary duty to pay invoices which are legitimate and uncontested. However, a sheriff may refuse to sign a pay order authorized by a county commission when the sheriff has good cause to doubt its legitimacy. Good cause in this context arises where the sheriff has a credible basis, supported by demonstrable evidence, to question the pay order.

■ We emphasize that only in rare and unusual circumstances will a sheriff feel compelled to raise a challenge to the legitimacy of invoices by refusing to sign pay orders authorized by a county commission. Our decision is certainly not to be viewed as a license for sheriffs to challenge every decision of this nature that county commissions make. A sheriff must act in good faith on the observation and belief that circumstances are such that a contest of the pay order is warranted. When a sheriff observes circumstances involving payment for goods and services which he believes are not lawful, the sheriff should first request that the county commission hold a hearing at which the sheriff may present information believed to cause the expenditure of public money to be improper. If, after the hearing the sheriff retains a good faith belief that the concerns raised at the hearing were not properly heard and reconciled, the sheriff should seek judicial review of the matter in the circuit court by application for an extraordinary writ. The sheriff should have legal representation during the entire review process. Normally, this representation will be provided by the prosecutor, but if the prosecutor can not serve in this capacity it is incumbent upon the county commission to furnish the sheriff legal counsel and pay for the reasonable cost of such representation.

■ Since the lower court's decision was premised on the existence of a nondiscretionary duty and the process outlined above was not followed, the writs of mandamus must be set aside and the matter remanded for further proceedings. Upon remand, the court's first action should be appointment of a special prosecutor to represent the sheriff to replace the prosecuting attorney who withdrew representation upon request of the parties. Additionally, the lower court should be mindful in its further consideration of this matter that under the provisions of West Virginia Code § 7–5–7(e), award of prejudgment interest is not automatic when a reviewing court orders payment by a sheriff of a check as authorized by a county commission. Such award is only proper when it is found that the sheriffs rejection of the claim was not based on good cause. With regard to award of attorney fees, it is only when a clear legal duty is breached that a presumption exists in favor of an award of attorney fees. *See* Syl. Pt. 3 and Syl. Pt. 4, *State ex rel West Virginia Highlands Conservancy, Inc. v. W. Va. Div. of Environmental Protection*, 193 W.Va. 650, 458

---

5. *See* Syl Pt. 9, in part, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953) ("It is a cardinal rule of statutory construction that a statute should be construed as a whole, so as to give effect, if possible, to every word, phrase, paragraph and provision thereof[.]").

S.E.2d 88 (1995). As established in our earlier discussion, a sheriff's duty in these circumstances is not unequivocal.

## IV. Conclusion

For the reasons set forth above, we find that the circuit court erred in determining that the sheriff had a nondiscretionary duty to sign the checks authorized by the county commission. We also find that the lower court erred by awarding attorney fees and prejudgment interest, as such awards were premised on the faulty conclusion that a sheriff's duty is nondiscretionary in all cir-

cumstances. Accordingly, the writs of mandamus entered by the Mingo County Circuit Court are set aside and the cases are remanded for further proceedings consistent with this opinion.

Reversed and remanded.